BRANCART & BRANCART
   Christopher Brancart (SBN 128475)
   Liza Cristol-Deman (SBN 190516)
Post Office Box 686
Pescadero, CA 94060
Tel:   (650) 879-0141
Fax:   (650) 879-1103
cbrancart@brancart.com
lcristoldeman@brancart.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GREATER NAPA FAIR HOUSING CENTER, a California Not for Profit Corporation, doing business as FAIR HOUSING NAPA VALLEY, as an individual entity only; RUBY DUNCAN, an incompetent adult, by and through her Guardian Ad Litem, MAE LOUISE WHITAKER; and EVA NORTHERN, an incompetent adult, by and through her Guardian ad Litem, NANCY NORTHERN, each individually and on behalf of individuals similarly situated; NANCY NORTHERN, in her individual capacity only; and MAE LOUISE WHITAKER, in her individual capacity only,** | Case No. **CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF; DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS** |
| Plaintiffs, | **CLASS ACTION** |
| vs. | |
| **HARVEST REDWOOD RETIREMENT RESIDENCE, L.L.C., doing business as Redwood Retirement Residence; REDWOOD RETIREMENT RESIDENCE L.L.C.; and HOLIDAY RETIREMENT CORP.,** | |
| Defendants. | |

///

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF; DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

1

# I. INTRODUCTION

1.    In this action, plaintiffs seek monetary, declaratory and injunctive relief against the owners, former owners, and management company of the Redwood Retirement Residence, a retirement community located at 2350 Redwood Road in Napa, California, for discriminating on the basis of disability or handicap in violation of the federal Fair Housing Act and related state laws.  Plaintiffs Ruby Duncan and Eva Northern, through their guardians ad litem, seek to represent a class and subclass of former, current and future tenants of the Redwood Retirement Residence, who have lived or will live there at any time since October 1, 2006.

# II. JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

2.    Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. section 1331 in that the claims alleged herein arise under the laws of the United States.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. section 1367 to hear and determine plaintiffs' state law claims because those claims are related to plaintiffs' federal law claims and arise out of a common nucleus of related facts.  Plaintiffs' state law claims are related to plaintiffs' federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

3.    Pursuant to Local Rule 3-2, venue is proper in the San Francisco Division because the claims alleged herein arose within Napa County, California.

# III. PARTIES

4.    Plaintiff Greater Napa Valley Fair Housing Center, doing business as Fair Housing Napa Valley (hereafter "FHNV"), is a not for profit fair housing organization incorporated under the laws of the State of California with its principal place of business in Napa, California.  FHNV is the fair housing organization serving Napa County. FHNV's primary objectives are to promote equal opportunity in the renting, purchasing, financing and advertising of housing; to educate people regarding federal and state fair housing laws; to promote integrated communities and neighborhood diversity; and, to eliminate discriminatory housing practices.  It is engaged in several different activities to

**CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF; DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

1   further its mission of promoting equal housing opportunities, including:  education

2   programs in the community regarding fair housing, training programs for real estate

3   professionals, research regarding housing discrimination in the community, advocacy

4   for housing-related issues, and fair housing counseling and investigations.

5          5.     Plaintiff Ruby Duncan is 100 years old.  She has been a resident of

6   apartment 209 at the Redwood Retirement Residence since approximately June 5,

7   2003.  Previously, she was a resident of apartment 110 at the Redwood Retirement

8   Residence between approximately May 1991 and May 2002.  Mrs. Duncan has arthritis

9   and uses a walker or electric cart to move around.  She is substantially impaired in her

10  ability to walk and engage in other major life activities.  She qualifies as a person with a

11  disability or handicap within the meaning of the federal Fair Housing Act, Disabled

12  Persons Act, and the California Fair Employment and Housing Act.  She is represented

13  herein by her daughter and guardian ad litem, Mae Louise Whitaker.

14         6.     Plaintiff Mae Louise Whitaker, the daughter of Ruby Duncan, is a resident

15  of Napa County, California.  Ms. Whitaker assists her mother Ruby Duncan with her

16  financial affairs, medical issues, housing, and a wide variety of other matters.  Mae

17  Louise Whitaker and Ruby Duncan entered into a springing durable general power of

18  attorney dated December 27, 1999, designating Ms. Whitaker as the attorney in fact for

19  her mother, Ms. Duncan.  The durable power of attorney has not been revoked or

20  cancelled.  Ms. Whitaker brings this action in her individual capacity and as guardian ad

21  litem for her mother Ruby Duncan.

22         7.     Plaintiff Eva Northern is 86 years old.  She was a resident of apartment

23  112 at the Redwood Retirement Residence from approximately March 1, 2001 until

24  March 15, 2007.  At the time that Eva Northern moved into the Redwood Retirement

25  Residence, she had several disabilities, including diabetes.  She also had complications

26  from a previous stroke, including communication and perception impairments.  She

27  qualifies as a person with a disability or handicap within the meaning of the federal Fair

28  Housing Act, Disabled Persons Act, and the California Fair Employment and Housing

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

1 | Act.  She is represented herein by her daughter and guardian ad litem, Nancy Northern.

2       8.    Plaintiff Nancy Northern, the daughter of Eva Northern, is a resident of

3 Contra Costa County, California.  During the time that Eva Northern was a resident of

4 the Redwood Retirement Residence and continuing through the present, Nancy

5 Northern has assisted her mother with her financial affairs, medical issues, housing,

6 and a wide variety of other matters.  Eva Northern and Nancy Northern entered into a

7 durable power of attorney dated March 4, 1996, designating Nancy Northern as the

8 attorney in fact for her mother, Eva Northern.  The durable power of attorney has not

9 been revoked or cancelled.  Ms. Northern brings this action in her individual capacity

10 and as guardian ad litem for her mother Eva Northern.

11       9.    The Redwood Retirement Residence, the subject premises in this action,

12 has approximately 100 apartment units that are marketed and offered for rental to

13 members of the general public.  It is located at located at 2350 Redwood Road in Napa,

14 California. Plaintiffs allege based on information and belief that the Redwood

15 Retirement Residence is offered as housing for older persons as defined in 42 U.S.C.

16 section 3607(b)(1).  The Redwood Retirement Residence qualifies as a dwelling within

17 the meaning of 42 U.S.C section 3602(b) and a housing accommodation within the

18 meaning of Government Code section 12927(d).

19       10.    Defendant Harvest Redwood Retirement Residence, LLC is a Delaware

20 Limited Liability Company licensed in California with a primary business address in

21 Salem, Oregon.  A grant deed recorded with the Napa County Recorder on March 15,

22 2007 indicates that defendant Harvest Redwood Retirement Residence, LLC is the

23 current owner of the Redwood Retirement Residence

24       11.    Defendant Redwood Retirement Residence LLC is an Oregon Limited

25 Liability Company with a primary address in Salem, Oregon.  According to public

26 documents recorded with the Napa County Recorder, defendant Redwood Retirement

27 Residence LLC was the owner of the Redwood Retirement Residence from

28 approximately April 5, 1999 until approximately February 28, 2007, when the manager

**CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

1  of the LLC signed a grant deed transferring ownership of the property to defendant

2  Harvest Redwood Retirement Residence LLC.

3      12.    Defendant Holiday Retirement Corporation (hereafter, "Holiday") is a

4  corporation registered to do business in California with a primary business address in

5  Salem, Oregon.  Holiday has been the management company responsible for the day-

6  to-day management and operation of the Redwood Retirement Residence at all times

7  relevant herein.

8      13.    Each defendant is, and at all times relevant was, the agent, employee or

9  representative of each other defendant; each defendant, in doing the acts or in omitting

10  to act as alleged in this complaint, was acting within the course and scope of his or her

11  actual or apparent authority pursuant to such agency; or the alleged acts or omissions

12  of each defendant as agent were subsequently ratified and adopted by each defendant

13  as principal.

14      14.    Defendants Harvest Redwood Retirement Residence, LLC, Redwood

15  Retirement Residence LLC, and  Holiday Retirement Corporation retained the authority

16  to control and direct the agents who committed the unlawful practices alleged in this

17  complaint.

18      15.    Defendants and their agents have conspired to violate federal and state

19  laws.  In committing each of the unlawful practices alleged in this complaint, each

20  defendant and their agents was acting during the course and in furtherance of that

21  conspiracy.

## IV.  CLASS ACTION ALLEGATIONS

### A.    DISABILITY CLASS

24      16.    <u>Class Definition</u>.  Class representatives Ruby Duncan and Eva Northern,

25  through their guardians ad litem, bring this action on behalf of themselves and

26  members of a class of similarly situated individuals.  The class that plaintiffs seek to

27  represent is defined as

28      All tenants of the Redwood Retirement Residence who have resided there

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

1    at any time since October 1, 2006, who have been or may be subjected to

2    defendants' challenged discriminatory housing practices.

3  In addition, class representative Eva Northern, through her guardian ad litem, seeks to

4  represent the subclass of former residents defined as

5    All tenants of the Redwood Retirement Residence, who have been or may be

6    subjected to defendants' challenged discriminatory housing practices and who

7    vacated the Redwood Retirement Residence under threat of eviction at any time

8    since October 1, 2006.

9  The class and subclass do not include home health care aides or attendants who may

10  have resided at the Redwood Retirement Residence while in the employ of the

11  Redwood residents or their families.  The term "disability class plaintiffs" as used herein

12  refers to Ruby Duncan and Eva Northern and the class and subclass of former, current

13  and future residents whom they seek to represent.  This action is maintainable as a

14  class action under Rule 23(a), Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of

15  Civil Procedure.

16      17.    <u>Numerosity</u>.  The number of members of the class on whose behalf

17  plaintiffs sue is unknown, but it is estimated to be so numerous that joinder of all such

18  members is impracticable.  The number of persons possibly affected by defendants'

19  illegal policies and practices is indeterminate, but it is larger than can be addressed by

20  joinder.

21      18.    <u>Adequacy of Representation</u>.  Class plaintiffs will fairly and adequately

22  protect the interests of the class because plaintiffs' counsel possesses the requisite

23  resources and ability to prosecute this action and because the class representatives'

24  interests are consistent with the interests of the class.

25      19.    <u>Commonality and Typicality</u>.  This suit poses questions of law and fact

26  that are common to and affect the rights of all members of the class.  The claims of the

27  class representatives are typical of the claims of class members as a whole, because

28  defendants have implemented and pursued a policy or practice of discriminating

**CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

1   against persons with disabilities or handicaps by promulgating and enforcing

2   discriminatory policies, by subjecting persons with disabilities or handicaps to different

3   terms and condition of rental, by serving eviction notices on people with disabilities or

4   handicaps, and publishing statements indicating limitations on people with disabilities or

5   handicaps.  Specifically, defendants:

6       a.    apply different terms and conditions of tenancy to disabled or

7           handicapped residents because of disability or handicap, including but not

8           limited to charging extra fees for residents who receive their meals in their

9           apartments because of a disability or handicap;

10      b.    evict residents with disabilities or handicaps because of disability or

11          handicap;

12      c.    subject residents to examinations or questions to determine

13          whether they are able to live independently;

14      e.    make, print or publish statements that indicated a limitation upon

15          people with disabilities or handicaps in the rental of housing, including but

16          not limited to making oral or written statements to the effect that all

17          residents must be able to live "independently;" and,

18      f.    fail to make reasonable accommodations when such

19          accommodations are necessary to permit people with disabilities or

20          handicaps to use and enjoy a dwelling.

21  Defendants' policies, practices and statements constitute discriminatory housing

22  practices within the meaning and in violation of the federal Fair Housing Act, the

23  California Fair Employment and Housing Act, the Disabled Persons Act, and the Unruh

24  Civil Rights Act.  These policies, practices and statements affect class members

25  comprised of all persons who have resided at the Redwood at any time from October 1,

26  2006, to the present, and will continue to affect future residents of the Redwood until

27  they are stopped.

28      20.    Superiority.  A class action is superior to other available methods for the

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

1  fair and efficient adjudication of the controversy of the claims of the class plaintiffs.

2  Common factual and legal questions so clearly predominate that class treatment is

3  appropriate.  The class as a whole is entitled to declaratory relief and to injunctive relief

4  to enjoin the unlawful policies and practices herein alleged.  Defendants applied their

5  discriminatory policies, practices and statements throughout the entire operation of the

6  Redwood.

7       21.  <u>General Applicability</u>.  Defendants have acted or refused to act on

8  grounds generally applicable to each class member by promulgating and enforcing

9  rules, regulations and policies that discriminate against persons with disabilities or

10  handicaps, thereby making appropriate final injunctive and declaratory relief with

11  respect to the class as a whole.

12       22.  <u>Risk of Inconsistent Adjudication</u>.  The class and subclass are readily

13  definable and prosecution of this action as a class action will eliminate the possibility of

14  repetitious litigation, and will eliminate the risk of inconsistent or varying adjudications

15  with respect to individual members of the class that would establish incompatible

16  standards of conduct for defendants.

17      **B.**    **SECURITY DEPOSIT CLASS**

18       23.  <u>Class Definition</u>.  In addition to the discriminatory housing practices

19  challenged herein, defendants have charged unlawful, non-refundable security deposits

20  in violation of California law.  Class representative Ruby Duncan, through her guardian

21  ad litem, bring this action on behalf of herself and members of a class of similarly

22  situated individuals.  The class that plaintiff seeks to represent is defined as

23        All tenants of the Redwood Retirement Residence at any time

24        commencing four years prior to the filing of this complaint who paid "non-

25        refundable" security deposits to defendants in violation of California Civil

26        Code § 1950.5.

27  The term "security deposit class plaintiffs" as used herein refers to Ruby Duncan and

28  the class of persons whom she seeks to represent.  This action is maintainable as a

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

8

1  class action under Rule 23(a), Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of
2  Civil Procedure.

3      24.    Numerosity.  The number of members of the class on whose behalf
4  plaintiffs sue is unknown, but it is estimated to be so numerous that joinder of all such
5  members is impracticable.  The number of persons possibly affected by defendants'
6  illegal policies and practices is indeterminate, but it is larger than can be addressed by
7  joinder.

8      25.    Adequacy of Representation.  Class plaintiffs will fairly and adequately
9  protect the interests of the class because plaintiffs' counsel possesses the requisite
10  resources and ability to prosecute this action and because the class representative's
11  interests are consistent with the interests of the class.

12      26.    Commonality and Typicality.  This suit poses questions of law and fact
13  that are common to and affect the rights of all members of the class.  The claims of the
14  class representative is typical of the claims of class members as a whole, because
15  defendants have implemented and a practice of charging tenants as "non-refundable"
16  signing charge at the commencement of tenancy.  That unlawful practice affected
17  former tenants and affects current tenants, and will continue to affect future residents of
18  the Redwood until it is stopped.

19      27.    Superiority.  A class action is superior to other available methods for the
20  fair and efficient adjudication of the controversy of the claims of the class plaintiffs.
21  Common factual and legal questions so clearly predominate that class treatment is
22  appropriate.  The class as a whole is entitled to declaratory relief and to injunctive relief
23  to enjoin the unlawful policies and practices herein alleged.  Defendants collected their
24  "non-refundable" security deposit upon the commencement of new tenancies at the
25  Redwood during the class period.

26      28.    General Applicability.  Defendants have acted or refused to act on
27  grounds generally applicable to each class member by collecting a "non-refundable"
28  security deposit upon the commencement of new tenancies at the Redwood during the

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

9

class period, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

29.    Risk of Inconsistent Adjudication.  The class and subclass are readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation, and will eliminate the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for defendants.

## V. FACTS UNDERLYING THE CLAIMS OF THE CLASSES AND SUBCLASS.

### A.    INTRODUCTION

30.    Defendants, acting individually and in concert, directly and through their agents, implemented a series of policies and practices with the purpose or effect of discriminating against residents with disabilities or handicaps at the Redwood Retirement Residence.

31.    Defendants have unlawfully discriminated against the disability class plaintiffs by refusing to rent, evicting, or otherwise making unavailable dwellings to people with disabilities or handicaps at the Redwood Retirement Residence, in violation of 42 U.S.C. section 3604(a), (f), and related state laws.

32.    Defendants have unlawfully discriminated against the disability class plaintiffs in the terms, conditions or privileges of the rental of apartment units at the Redwood Retirement Residence by promulgating and enforcing rules with the purpose and effect of discriminating against people with disabilities or handicaps, in violation of 42 U.S.C. section 3604(b), (f), and related state laws.

33.    Defendants have unlawfully discriminated against the disability class plaintiffs by making and causing to be made, printing and publishing discriminatory rules, regulations and statements indicating preferences, limitations and discrimination based on handicap or disability at the Redwood Retirement Residence, in violation of 42 U.S.C. section 3604(c), (f), and related state laws.

34.    Defendants have unlawfully discriminated against the disability class

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

1   plaintiffs by refusing to make reasonable accommodations to rules, policies, practices

2   or services when such accommodations are necessary to afford people with disabilities

3   or handicaps an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C.

4   section 3604(f)(3)(B), and related state laws.

5        35.    Defendants have unlawfully discriminated against the disability class

6   plaintiffs by coercion, intimidation, threats and interference with the use and enjoyment

7   of dwellings because of handicap or disability, and by creating a hostile living

8   environment in violation of 42 U.S.C. section 3617 and related state laws.

9        36.    Defendants have unlawfully charged the security deposit class plaintiffs

10   non-refundable security deposits in connection with the rental of apartments at the

11   Redwood Retirement Residence in violation of California Civil Code section 1950.5.

12   **B.    FACTS UNDERLYING THE CLAIMS OF RUBY DUNCAN AND MAE**

13   **LOUISE WHITAKER**

14       37.    In 1991, Ruby Duncan moved from a retirement residence in Riverside,

15   California to the Redwood Retirement Residence in order to live closer to her daughter,

16   Mae Louise Whitaker.  Between May 1991 and May 2002, Mrs. Duncan lived in

17   apartment 110 at the Redwood Retirement Residence.

18       38.    In June 2002, Mrs. Duncan moved to an assisted living facility in Napa,

19   California, where she lived for approximately one year.  At the end of that year, she

20   decided to return to the Redwood Retirement Residence.  On or about June 5, 2003,

21   she signed a new rental agreement for apartment 209 at the Redwood Retirement

22   Residence.  Apartment 209 is a studio apartment with one bathroom and a small

23   kitchenette.  The initial rent for apartment 209 was $1,695 but it has just been raised to

24   $1,955.  The rent includes three meals a day, light housekeeping, social programs for

25   the residents, and a variety of other amenities.  Mrs. Duncan continues to live in

26   apartment 209 at the Redwood Retirement Residence.

27       39.    The rental agreement signed by Mrs. Duncan requires payment of a

28   "signing fee" in the amount of $847.50, and a security deposit in the amount of $847.50.

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

1    The "signing fee" is described in an addendum to the rental agreement as a "one-time
2    fee [that] is non-refundable" unless the tenant moves out in 90 days or less.  If the
3    tenant stays at the Redwood Retirement Residence 91 days or longer, the "signing fee"
4    is non-refundable.  Mrs. Duncan paid both the security deposit and non-refundable
5    "signing fee" to the Redwood Retirement Residence on or about June 5, 2003.

6         40.    Mrs. Duncan has had the assistance of a home health care aide since
7    approximately June 2003.  Mrs. Duncan and Mrs. Whitaker pay the home health care
8    aide directly for her services.  The home health care aide assists Mrs. Duncan with daily
9    activities such as taking medications and ambulating.  Frequently, Mrs. Duncan does
10   not feel well enough to dress and leave her apartment because of her health.  The
11   home health care aide goes to the kitchen at meal times to pick up meal trays for Mrs.
12   Duncan so that she can stay in her apartment instead of going to the communal dining
13   room.

14        41.    In late 2006, during a visit to the Redwood Retirement Residence, Mrs.
15   Whitaker found a document in her mother's apartment entitled "the Redwood Meal Tray
16   Policy."  She read the document and became concerned because the new meal tray
17   policy indicated that the management would assess extra charges for in-home meal
18   service with very limited exceptions.  The limited exceptions – short term illness such as
19   the flu, or short term recuperation from injury or illness with full recovery expected – did
20   not cover Mrs. Duncan's situation.

21        42.    At around the same time that she became aware of the new meal tray
22   policy, Mrs. Whitaker learned that the managers of the Redwood Retirement Residence
23   were asking residents to move out if they could no longer use the communal dining
24   room or did not otherwise fit within the managers' definition of an "active, independent"
25   senior.

26        43.    In December 2006, Mrs. Whitaker contacted the managers of the
27   Redwood Retirement Residence and asked about the meal trays.  Mrs. Whitaker
28   pointed out that in-home meal trays did not pose any extra burden or expense for the

**CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

1  Redwood Retirement Residence since Mrs. Duncan's home health care aide picks up
2  and returns the trays and dishes to the kitchen.  She also asked for a reduction in rent
3  as reimbursement for the meals Ruby Duncan did not take from the kitchen.  In
4  response to these inquiries, one of the resident managers of Redwood Retirement
5  Residence, Denise Hall, informed Ms. Whitaker that her mother would have to move
6  out if she could not eat her meals in the dining room.

7      44.    Shortly thereafter, Mrs. Whitaker provided a letter to the Redwood
8  Retirement Residence from Mrs. Duncan's physician verifying that Mrs. Duncan should
9  be permitted to take her meals in her apartment due to her physical condition.  To date,
10  neither Mrs. Duncan nor Mrs. Whitaker has received any response to the physician's
11  letter.

12     45.    In December 2006, Mrs. Whitaker contacted the managers of the
13  Redwood Retirement Residence to inquire about the move-out notices that had been
14  served on some disabled residents.  Denise Hall stated that Mrs. Duncan was not on
15  "the list" of residents who were being asked to move out, but that she would be asked to
16  move out "soon," or words to that effect.  Mrs. Whitaker asked why the managers were
17  evicting these people.  Mr. Hall and Mrs. Hall stated that they wanted the Redwood
18  Retirement Residence to be a retirement home, like it used to be, rather than an "old
19  folks' home," or words to that effect.  They stated that they were "weeding out" the
20  wheelchairs and walkers because they gave Redwood Retirement Residence "a bad
21  image," or words to that effect.  They added that Mrs. Whitaker should start looking for
22  another home for her mother, Ruby Duncan.

23     46.    Mrs. Whitaker and Mrs. Duncan continue to fear that the managers will
24  serve Mrs. Duncan with a move out notice or take other action to evict Mrs. Duncan
25  from the Redwood Retirement Residence.  Mrs. Duncan does not want to move out of
26  the Redwood Retirement Residence.

27  ///
28  ///

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

1    **C.    FACTS UNDERLYING THE CLAIMS OF EVA NORTHERN AND NANCY**
2    **NORTHERN.**

3        47.    In December 2000, Eva Northern and Nancy Northern visited the
4    Redwood Retirement Residence to look into renting an apartment for Eva Northern.
5    Eva Northern and Nancy Northern decided to rent an apartment at the Redwood
6    Retirement Residence with two bedrooms and one bathroom.  Nancy Northern
7    informed the resident managers that they liked the two-bedroom apartment because
8    her mother might need extra room for a live-in care giver as she aged.  Eva Northern
9    and Nancy Northern expected that Eva Northern would live at the Redwood Retirement
10   Residence for the rest of her life.

11       48.    In January 2001, Eva Northern signed a rental agreement for apartment
12   112 at the Redwood Retirement Residence, and moved in on or about March 1, 2001.
13   The apartment had a small kitchenette with a mini refrigerator and sink.  The monthly
14   rent  included three meals a day, light housekeeping, social programs for the residents,
15   and a variety of other amenities.  When she moved out in March 2007, the monthly rent
16   for apartment 112 was $2,735.

17       49.    At the time that Eva Northern moved into the Redwood Retirement
18   Residence, she had several disabilities, including diabetes.  She also had complications
19   from a previous stroke, including communication and perception impairments.  Soon
20   after Eva Northern moved in to the Redwood Retirement Residence, Nancy Northern
21   hired home health care aides to assist Eva Northern with daily activities such as taking
22   medications and getting dressed.  The home health care aides also went to the
23   Redwood Retirement Residence kitchen at meal times to pick up meal trays for Eva
24   Northern to eat in her apartment.  The home health care aides assisted Eva Northern
25   for several hours each day throughout her tenancy at the Redwood Retirement
26   Residence.  Nancy Northern and Eva Northern paid the home health care aides directly
27   for their services.

28       50.    In September 2006, Nancy Northern received a phone call from one of

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

1  Eva Northern's home health care aides, informing her that the Redwood Retirement
2  Residence had a new policy prohibiting her from bringing Eva Northern's meals to her
3  apartment every day.  Shortly thereafter, Eva Northern received a notice from the
4  Redwood Retirement Residence entitled "The Redwood Meal Tray Policy."  That notice
5  reads, in pertinent part,

> With few exceptions, meal trays will be permitted only for residents who
> are temporarily ill or who are rehabilitating and cannot come to the dining
> room due to their short-term condition where full or near full recovery is
> expected.
>
> ...
>
> If the temporary illness or rehabilitation lasts longer than 3 days, the
> Redwood will charge the resident a $10.00 per day meal tray preparation
> fee commencing on the 4th day trays are being delivered to the resident.

14       51.     The same notice also stated, "please keep in mind that the Redwood is a
15  retirement community designed for active and independent seniors."

16       52.     Nancy Northern called the resident managers of the Redwood Retirement
17  Residence to discuss the new meal tray policies.  She informed them that her mother,
18  Eva Northern, wanted to continue to have her home health care aide pick up meal trays
19  from the kitchen and bring them to her room.  The managers agreed that this
20  arrangement could continue for some unspecified period of time.

21       53.     On or about December 31, 2006, a home health care aide contacted
22  Nancy Northern by phone and stated the Redwood Retirement Residence had
23  prohibited her from picking up any additional meals for Eva Northern.  She stated that
24  Eva Northern had not been given any breakfast by the Redwood Retirement
25  Residence, and that she had taken some fruit from a holiday gift basket so that Eva
26  Northern could eat and her blood sugar would not become dangerously low.

27       54.     On the same day that she received the call from the home health care
28  aide, Nancy Northern drove to the Redwood Retirement Residence and met with the

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

1  managers.  She explained to them that Eva Northern did not eat her meals in the dining

2  room because of her communication impairments.  The managers agreed to permit the

3  home health care aides to pick up additional food trays if Nancy Northern would agree

4  to pay $5.00 per tray.  Nancy Northern agreed to pay the charges because she was told

5  her mother's meal trays would be discontinued if she did not agree to pay.  Nancy

6  Northern reiterated to the resident managers that she disagreed with the meal tray

7  policy.

8      55.    On or about January 3, 2007, Nancy Northern received a phone call from

9  Tom Ahrens, who identified himself as a regional manager for Holiday.  Mr. Ahrens

10  stated that the Redwood Retirement Residence is an "independent living facility," and

11  that people who cannot eat their meals in the dining room "do not belong at the

12  Redwood," or words to that effect.  Mr. Ahrens stated that the Redwood Retirement

13  Residence was "not intended" for people who could not make it to the dining room.

14  Nancy Northern told Mr. Ahrens that she had never before been told that the Redwood

15  Retirement Residence was limited to people who could use the dining room, and that

16  she had helped her mother move into the Redwood Retirement Residence with the

17  expectation that she could live there until she died even if she had disabilities that

18  prevented her from going to the dining room.

19      56.    Nancy Northern advised Mr. Ahrens that the meal trays imposed no

20  additional burden or cost on the Redwood Retirement Residence, since the privately-

21  paid, home health care aide picked up the meal trays, brought them to Eva Northern,

22  and returned them to the kitchen after she was finished.  Nancy Northern also pointed

23  out that her mother was diabetic, and that it was inhumane to deny her food.  Mr.

24  Ahrens stated that he would permit her to continue to receive meal trays in her room

25  free of extra charges until January 8, 2007, but no longer.  Nancy Northern also stated

26  that since meals were included in the monthly rental, her mother should be reimbursed

27  if the Redwood Retirement Residence refused to provide those meals.  Mr. Ahrens

28  stated that he would look into her request for reimbursement and call her back.  Mr.

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

1   Ahrens never called her back.  Nancy Northern then made the same request to the

2   managers at Redwood Retirement Residence, but no one from Redwood Retirement

3   Residence or Holiday ever provided any information about whether she could be

4   reimbursed for missed meals.

5       57.    Nancy Northern was shocked and upset by this phone call with Mr.

6   Ahrens.  She acted quickly to ensure that her mother would be able to eat despite the

7   Redwood Retirement Residence's policy.  She purchased a small freezer and placed it

8   in Eva Northern's apartment.  She purchased and cooked meals to be frozen or

9   refrigerated in her mother's apartment to be served by the home health care aides.  For

10  two and one-half months, Nancy Northern made several trips per week to the Redwood

11  Retirement Residence to purchase and deliver meals for her mother.

12      58.    During this same period of time, Nancy Northern learned that some of the

13  residents at the Redwood Retirement Residence had been asked to move out because

14  they required assistance and could not live independently.  She feared that her mother

15  would receive an eviction notice.  As a result of this fear, the new meal tray policy, and

16  Mr. Ahrens' comments indicating that people with disabilities were not welcome at the

17  Redwood Retirement Residence, Nancy Northern began to look for another residence

18  for her mother.

19      59.    In early March 2007, Nancy Northern made arrangements to move Eva

20  Northern to Aegis, an assisted living facility in Napa, California.  Eva Northern

21  vehemently opposed moving out of the Redwood Retirement Residence.  Nevertheless,

22  she moved out of the Redwood Retirement Residence to Aegis, a facility that provides

23  housing for older persons, on or about March 15, 2007.  The monthly cost of Aegis far

24  exceeded the cost of the Redwood Retirement Residence, even when the cost of the

25  private, in-home health care aide at the Redwood Retirement Residence is included.

26      60.    After moving out of the Redwood Retirement Residence, Eva Northern's

27  physical and mental condition declined significantly.  Eva Northern was hospitalized

28  with an infection on or about June 1, 2007.  Following her release from the hospital,

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

17

1  Eva Northern moved out of Aegis and into a board and care home.  The cost of the

2  board and care home exceed the cost of Redwood Retirement Residence.

3       **D.**     **THE INVOLVEMENT OF FAIR HOUSING NAPA VALLEY**

4       61.     Between November 2, 2006 and the present, FHNV received complaints

5  from at least eight individuals about discrimination based on handicap or disability at

6  the Redwood Retirement Residence.  The first complainant advised FHNV that the

7  Redwood Retirement Residence management had given a family member a 30-day

8  notice to vacate because of her health, advising that "the Redwood is an independent

9  living community for seniors able to maintain an active lifestyle."  In response to that

10  complaint and those that followed, FHNV conducted an investigation into defendants'

11  rental practices.

12       62.     During that investigation, plaintiff FHNV learned that numerous residents

13  had received oral or written 30-day eviction notices starting in the fall of 2006 because

14  of their handicaps or disabilities.  Plaintiffs further allege based on information and

15  belief that many of the residents who received move out notices have since moved out

16  of the Redwood Retirement Residence.  Other residents have moved out because of

17  the threat of receiving such notices and the fear of having to relocate on short notice.

18       63.     During their investigation, plaintiff FHNV also learned that some or all

19  residents at the Redwood Retirement Residence had been subjected to an

20  examination, or questioning, or both, about their physical and mental condition in the

21  fall of 2006.  Plaintiffs allege based on information and belief that the examination and

22  questioning were designed to determine which residents should be asked to move out

23  because they were "too disabled" to reside at the Redwood Retirement Residence.

24       64.     During their investigation, plaintiff FHNV also learned that defendants had

25  placed restrictions on the activities of home health care aides hired by the Redwood

26  Retirement Residence residents, including prohibiting the aides from sitting in the dining

27  room to assist residents during meals.

28       65.     On or about June 18, 2007, plaintiff FHNV distributed letters and

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

1  brochures to residents of the Redwood Retirement Residence as part of an educational

2  campaign about fair housing rights.

3      **E.    INJURIES**

4      66.    Defendants have made statements, promulgated and enforced rules,

5  regulations, and policies, evicted tenants, and created or maintained a hostile

6  environment with the purpose or effect of discriminating against people with handicaps

7  and disabilities at the Redwood Retirement Residence.  Defendants continue to engage

8  in such a pattern or practice of discrimination so as to constitute a continuing violation.

9      67.    By reason of defendants' unlawful acts and practices, the disability class

10  plaintiffs have suffered economic damages, violation of their civil rights, emotional and

11  physical distress, humiliation and mental anguish, including bodily injury such as

12  headaches, stomach aches and loss of sleep, breach of the covenant of quiet

13  enjoyment of their dwellings and invasion of the private right of occupancy.  The

14  members of the disability plaintiff sub-class have also suffered loss of an important

15  housing opportunity, constructive and wrongful eviction, including breach of the

16  covenant of quiet enjoyment of their dwellings and invasion of the private right of

17  occupancy, and economic damages and emotional distress in connection with their

18  move out of the Redwood Retirement Residence.  The disability class plaintiffs and

19  plaintiff sub-class are, therefore, entitled to compensatory damages.

20      68.    By reason of defendants' unlawful acts and practices, the security deposit

21  class plaintiffs have suffered actual damages and entitled to refund of the unlawfully

22  collected security deposit and statutory damages.

23      69.    By reason of defendants' unlawful acts and practices, individual plaintiffs

24  Mae Louise Whitaker and Nancy Northern have suffered economic damages,

25  emotional and physical distress, humiliation and mental anguish, including bodily injury

26  such as headaches, stomachaches and loss of sleep.  These individual plaintiffs,

27  therefore, are entitled to compensatory damages.

28      70.    Defendants' discriminatory actions have caused and are continuing to

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

1  cause harm to Fair Housing Napa Valley by frustrating its mission of eliminating

2  discriminatory housing practices throughout its service area.  Defendants' actions have

3  interfered with all of the efforts and programs of FHNV by (1) forcing FHNV to direct

4  their scarce resources to identifying and counteracting the defendants' unlawful

5  practices, and (2) frustrating its mission of eliminating discriminatory housing practices

6  in their service area.  Defendants' unlawful acts and practices have caused FHNV to

7  suffer economic losses in staff pay, in funds expended in support of its investigation,

8  and in the inability to prevent other unlawful housing practices and undertake other

9  activities in support of its mission.  Defendants' actions have set back FHNV's goal of

10  achieving fair housing for prospective tenants regardless of disability by impeding its

11  effort to educate the public about the fair housing laws.  FHNV is, therefore, entitled to

12  compensatory damages.

13       71.  In doing the acts of which the disability class plaintiffs, FHNV and the

14  individual plaintiffs complain, defendants and their agents and employees acted with

15  reckless disregard for plaintiffs' civil rights.  Accordingly, the disability class plaintiffs,

16  FHNV and the individual plaintiffs are entitled to punitive damages.

17       72.  There now exists an actual controversy between the parties regarding

18  defendants' duties under the federal and state fair housing laws.  Accordingly, the

19  disability class plaintiffs, FHNV and the individual plaintiffs are entitled to declaratory

20  relief.

21       73.  Unless enjoined, defendants will continue to engage in the unlawful acts

22  and the pattern or practice of discrimination described above.  The disability class

23  plaintiffs, FHNV and the individual plaintiffs have no adequate remedy at law.  They are

24  now suffering, and will continue to suffer, irreparable injury from defendants' acts and

25  their pattern or practice of discrimination based on disability or handicap unless relief is

26  provided by this Court.  Accordingly, the disability class plaintiffs, FHNV and the

27  individual plaintiffs are entitled to injunctive relief.

28  ///

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

# VI. CLAIMS

## A. FIRST CLAIM

### [Fair Housing Act]

*Disability Class Plaintiffs, FHNV and Individual Plaintiffs v. Defendants*

74.  Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

75.  Defendants have injured the disability class plaintiffs, FHNV and the individual plaintiffs by committing discriminatory housing practices in violation of the federal Fair Housing Act, 42 U.S.C. section 3601 et seq.

## B. SECOND CLAIM

### [California Fair Employment and Housing Act]

*Disability Class Plaintiffs, FHNV and Individual Plaintiffs v. Defendants*

76.  Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

77.  Defendants have injured the disability class plaintiffs, FHNV and the individual plaintiffs by committing discriminatory housing practices in violation of the California Fair Employment and Housing Act, California Government Code section 12955, et seq.

## C. THIRD CLAIM

### [California Unruh Civil Rights Act]

*Disability Class Plaintiffs and Individual Plaintiffs v. Defendants*

78.  Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

79.  Defendants have injured the disability class plaintiffs and individual plaintiffs by committing unlawful practices in violation of the Unruh Civil Rights Act, California Civil Code section 51, et seq.

80.  Pursuant to the Unruh Civil Rights Act the disability class plaintiffs and individual class plaintiffs are entitled to statutory damages, among other remedies, of

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF; DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

21

1    up to three times actual damages as determined by a trier of fact.

2                              **D. FOURTH CLAIM**

3                              **[Disabled Persons Act]**

4                *Disability Class Plaintiffs only v. Defendants*

5          81.    Plaintiffs reallege and incorporate by reference each paragraph previously

6    alleged in this complaint.

7          82.    Defendants injured the disability class plaintiffs in violation of the Disabled

8    Persons Act by committing the following unlawful housing practices:

9                a.    Denying full and equal access to housing accommodations, in

10                     violation of Civil Code § 54.1(b)(1); and,

11               b.    Refusing to make reasonable accommodations in rules, policies,

12                     practices, or services when those accommodations may be necessary to

13                     afford individuals with disabilities the equal opportunity to use and enjoy

14                     housing accommodations, in violation of Civil Code 54.1(b)(3)(B).

15         83.    Pursuant to Civil Code 54.1, the disability class plaintiffs are entitled to

16   statutory damages, among other remedies, of up to three times actual damages as

17   determined by a trier of fact.

18                              **E. FIFTH CLAIM**

19                **[Unfair Business Practices re Discrimination]**

20   *Disability Class Plaintiffs, FHNV and Individual Plaintiffs v. Defendants*

21         84.    Plaintiffs reallege and incorporate by reference each paragraph previously

22   alleged in this complaint.

23         85.    In acting as herein alleged, defendants have engaged in a pattern or

24   practice of unlawful discrimination in the operation of the Redwood Retirement

25   Residence, a business establishment, and therefore have engaged in acts of unfair

26   competition as the same is defined in section 17200 of the Business & Professions

27   Code.

28         86.    In bringing this action, plaintiffs and the plaintiff class are acting in the

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

1 | interest of themselves and the general public pursuant to the California Business and
2 | Professions Code § 17204.

3 |      87.    Plaintiffs and the plaintiff class seek injunctive relief ordering defendants
4 | to stop their unlawful practices.

5 | **F.  SIXTH CLAIM**

6 | **[Unfair Business Practices]**

7 | ***Security Deposit Class Plaintiffs only v. Defendants***

8 |      88.    Plaintiffs reallege and incorporate by reference each paragraph previously
9 | alleged in this complaint.

10 |      89.    In acting as herein alleged, defendants have engaged in acts of unfair
11 | competition as the same is defined in section 17200 of the Business & Professions
12 | Code. by violating Civil Code § 1950.5 governing the security deposits.

13 |      90.    In bringing this action, plaintiffs and the plaintiff class are acting in the
14 | interest of themselves and the general public pursuant to the California Business and
15 | Professions Code § 17204.

16 |      91.    Plaintiffs and the plaintiff class seek injunctive relief ordering defendants
17 | to stop their unlawful practices and restitution of the security deposits wrongfully
18 | collected and/or withheld.

19 | **G.  SEVENTH CLAIM**

20 | **[Unlawful Security Deposit]**

21 | ***Security Deposit Class Plaintiffs only vs. Defendants***

22 |      92.    Plaintiffs reallege and incorporate by reference each paragraph previously
23 | alleged in this complaint.

24 |      93.    Defendants injured the security deposit class plaintiffs by demanding and
25 | collecting a non-refundable security deposit in violation of Civil Code § 1950.5(m).

26 |      94.    Pursuant to Civil Code § 1950.5(l), the security deposit class plaintiffs are
27 | entitled to statutory damages of up to twice the amount of the non-refundable security
28 | deposit, plus actual damages according to proof.

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

23

## VII.  RELIEF

WHEREFORE, plaintiffs and all class members pray for the following relief against defendants:

1.      That the classes and sub-class described above be certified in this action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2.      That the plaintiffs and all class members be awarded statutory, compensatory, and punitive damages according to proof;

3.      That the Court enter a declaratory judgment that defendants have violated the applicable provisions of the federal Fair Housing Act and California Fair Employment and Housing Act;

4.      That the Court grant temporary, preliminary and permanent injunctive relief against all practices complained about herein and affirmative injunctive relief requiring defendants, their partners, agents, employees, assignees and all persons acting in concert with or participating with them, to take affirmative action to provide equal housing opportunities to all persons without regard to disability or handicap;

5.      That the Court order defendants to make restitution to plaintiffs and the security deposit plaintiff class;

6.      For costs of suit, including reasonable attorneys' fees; and,

7.      All such other relief as the Court deems just.

Dated: July 16, 2007.

Respectfully submitted,

BRANCART & BRANCART

Liza Cristol-Deman
Attorneys for Plaintiffs

///

///

///

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

1

### VIII. JURY DEMAND

2    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby

3    request a trial by jury.

4    Dated: July 16, 2007.

5                                        Respectfully submitted,

6                                        BRANCART & BRANCART

7

8                                        _____
                                         Liza Cristol-Deman
9                                        Attorneys for Plaintiffs

10

11    ### IX. CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

12    Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other

13    than the named parties, there is no such interest to report.

14    Dated: July 16, 2007.

15                                       Respectfully submitted,

16                                       BRANCART & BRANCART

17

18                                       _____
                                         Liza Cristol-Deman
19                                       Attorneys for Plaintiffs

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS