1  HANSON BRIDGETT MARCUS VLAHOS & RUDY, LLP
   KURT A. FRANKLIN - 172715
2  SARAH D. MOTT - 148597
   425 Market Street, 26th Floor
3  San Francisco, CA 94105
   Telephone:    (415) 777-3200
4  Facsimile:    (415) 541-9366
   kfranklin@hansonbridgett.com
5  smott@hansonbridgett.com

6  Attorneys for Defendants
   HARVEST REDWOOD RETIREMENT RESIDENCE,
7  L.L.C., doing business as Redwood Retirement Residence,
   RETIREMENT RESIDENCE, L.L.C.; and HOLIDAY
8  RETIREMENT CORP.

9              UNITED STATES DISTRICT COURT

10           FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  GREATER NAPA FAIR HOUSING CENTER, a California Not for Profit Corporation, doing business as FAIR HOUSING NAPA VALLEY, as an individual entity only; RUBY DUNCAN, an incompetent adult, by and through her Guardian Ad Litem, MAE LOUISE WHITAKER; and EVA NORTHERN, an incompetent adult, by and through her Guardian Ad Litem, NANCY NORTHERN, each individually and on behalf of individuals similarly situated; NANCY NORTHERN, in her individual capacity only; and MAE LOUISE WHITAKER, in her individual capacity only,<br><br>              Plaintiffs,<br><br>    v.<br><br>HARVEST REDWOOD RETIREMENT RESIDENCE, L.L.C., doing business as Redwood Retirement Residence; REDWOOD RETIREMENT RESIDENCE L.L.C.; and HOLIDAY RETIREMENT CORP.,<br><br>              Defendants. | No. C 07 3652 PJH<br><br>**DECLARATION OF VANESSA BATTEN IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR ISSUANCE OF PRELIMINARY INJUNCTION**<br><br>Date:  September 26, 2007<br>Time:  9:00 a.m.<br>Dept:  Ctrm. 3, 17th Fl.<br>Judge: Hon. Phyllis J. Hamilton |

- 1 -
DECL VANESSA BATTEN IN SUPPT OPPO TO MTN FOR PRELIM INJUNCTION
(CASE NO. C 07 3652 PJH)

1350645.1

- 2 -

I, Vanessa Batten, hereby declare that I have personal knowledge of the facts set forth herein and, if called upon to testify, I would truthfully and competently testify to the following:

1. My husband and I became the resident managers at Redwood Retirement Residence ("Redwood" or "Residence) on May 4, 2007. My nickname is Misty.

2. At the time we arrived, there were two pending eviction notices. One was for Bernice Thornton, who has since moved out. The other was issued to Dorman "Pete" Mitchell. He remains a resident and we have rescinded his eviction notice because we were contacted by a person from the Veteran's Administration, who requested that we accommodate him and we were able to do so. We worked with the VA, which arranged for a care giver to come and assist Mr. Mitchell with his incontinence and bed sores. Mr. Mitchell also agreed to wear his earphones while watching television, which we were told he refused to do prior to that time. We have had no complaints from residents and we are happy to have him here.

3. Bernice Thornton needed 24-hour assistance seven days a week. Other than finding her occasionally wandering in the hallway, disoriented, she did not regularly come out of her room. I recall one social function she attended, Casino Night. She was being led around the room by her care giver. I was told by the sous chef that she wandered into the kitchen unclothed talking about apples. She received her meals on trays in her room. During the time we have been managers, she was never charged for a meal tray. Ms. Thornton still owes Redwood for her last month's rent.

4. On or about May 10, 2007, we received a letter from Kathryn Winter at Fair Housing Napa, who advised us that a sixty (60) day eviction notice was required for evictions in California rather than the thirty (30) day eviction notice that had been sent out by our predecessors. We immediately sent the letter to Regional Director Tom Ahrens. A sixty-day eviction notice later was issued for Ms. Thornton.

5. In June 2007, Redwood sales manager Adrian Rose told me he had noticed two young women in the hallway. One was pushing papers under residents' doors and the other was taking photos of her doing it. He told me he walked over to them and asked what they were doing. They refused to identify themselves. He told me he asked if they had checked in with the

- 2 -

resident managers and received permission to be on the premises. They said it was "ok," that they were done anyway and ran down the stairs and left the building. Later that day, several residents showed me copies of a letter dated June 15, 2007, from Stephen Cogswell of Fair Housing Napa Valley, along with a flyer from that organization, which had been pushed under their doors. No one from that agency ever requested permission to distribute material in the building.

6. We have not issued any other eviction notices. Our current residents are meeting the terms of their occupancy; i.e., they are capable of providing for their own health care or personal care needs, with or without a care giver, and do not create a danger to themselves or others. Accordingly, we have no intention of issuing any eviction notices to any residents.

7. Since we arrived at the Residence, we have not charged any residents for meal trays. I have been unable to locate any records that substantiate that Ruby Duncan was ever charged for a meal tray. She received a meal tray free of charge whenever she requested one.

8. At the time we took over as resident managers, a number of residents had walkers, canes, electric "mobies" and wheelchairs. We still have many residents who use walkers, canes, electric "mobies" and wheelchairs and they are able to live active, independent lives.

9. We have filled nine (9) units since April 2007. At least fifty percent (50%) of the new residents have walkers and canes. Several are in wheelchairs. All except one, a 62-year-old mentally handicapped man, are in their 80's or 90's. Some of them have Alzheimer's, according to their care givers. The "average" resident is a female of about 85 or 86 years of age who uses a cane or walker. One resident has been here 18 years; the average appears to be about six (6) years. Approximately a quarter of our residents have personal care givers who come to or live on the premises.

10. On or about July 19, 2007, I received a letter from Maria Esparza from Fair Housing Napa Valley, which on information and belief was sent to all Redwood residents, stating that it was investigating claims of discrimination against people with disabilities at the Residence. It asked residents to call her to "speak about [their] experience living at" Redwood. I did not contact Ms. Esparza nor in any way inquire into whether any residents chose to speak with her.

11. On August 20, 2007, I was pouring coffee in the dining room and was told by one

- 3 -

of the residents that she had received a telephone call that morning from someone from an agency who asked whether she had ever received an eviction notice. I did not follow up or ask any other residents if they had received similar telephone calls.

12. I have not made discriminatory statements relating to the disabilities of residents or prospective residents. We will reasonably accommodate residents' disabilities so long as they do not endanger themselves, others, or regularly interfere with other residents' right to enjoy and utilize their premises. I believe the elderly can maintain active independent lifestyles and regularly observe this even with persons that have severe disabilities, so long as they receive adequate care. My use of those terms in no way reflects any bias against persons with disabilities.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 4 day of September, 2007 at Napa, California.

_Vanessa Batten_
Vanessa Batten