1  HANSON BRIDGETT MARCUS VLAHOS & RUDY, LLP
   KURT A. FRANKLIN - 172715
2  SARAH D. MOTT - 148597
   425 Market Street, 26th Floor
3  San Francisco, CA 94105
   Telephone:   (415) 777-3200
4  Facsimile:   (415) 541-9366
   kfranklin@hansonbridgett.com
5  smott@hansonbridgett.com

6  Attorneys for Defendants
   HARVEST REDWOOD RETIREMENT RESIDENCE,
7  L.L.C., doing business as Redwood Retirement Residence,
   RETIREMENT RESIDENCE, L.L.C.; and HOLIDAY
8  RETIREMENT CORP.

9  BRANCART & BRANCART
   Christopher Brancart (SBN 128475)
10 Liza Cristol-Deman (SBN 190516)
   Post Office Box. 686
11 Pescadero, CA 94060
   Tel: (650) 879-0141
12 Fax: (650) 879-1103
   cbrancart@brancart.com
13 lcristoldeman@brancart.com

14 Attorneys for Plaintiffs

15 PROTECTION & ADVOCACY, INC.
   Stuart Seaborn (SBN 198590)
16 Dara Schur (SBN 98638)
   Eric Gelber (SBN 95256)
17 100 Howe Ave., Suite 235N
   Sacramento, CA 95825
18 Tel: (916) 488-9950
   Fax: (916) 488-9960
19 stuart.seaborn@pai-ca.gov

20 Attorneys for Ruby Duncan, Eva Northern,
   and Class Plaintiffs Only

21
22                    UNITED STATES DISTRICT COURT

23                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

24
25
26
27
28

- 1 -

JOINT CASE MANAGEMENT STATEMENT (LR 16-9) NO. C 07 3652 PJH                    1360889.2

| | | |
|---|---|---|
| 1 | GREATER NAPA FAIR HOUSING CENTER, a California Not for Profit Corporation, doing business as FAIR HOUSING NAPA VALLEY, as an individual entity only; RUBY DUNCAN, an incompetent adult, by and through her Guardian Ad Litem, MAE LOUISE WHITAKER; and EVA NORTHERN, an incompetent adult, by and through her Guardian Ad Litem, NANCY NORTHERN, each individually and on behalf of individuals similarly situated; NANCY NORTHERN, in her individual capacity only; and MAE LOUISE WHITAKER, in her individual capacity only, | No. C 07 3652 PJH |
| 2 | | **JOINT CASE MANAGEMENT STATEMENT (LR 16-9)** |
| 3 | | |
| 4 | | **Case Management Conference** |
| 5 | | Date: October 25, 2007<br>Time: 2:30 p.m.<br>Place: 450 Golden Gate Ave.<br>         Courtroom 3, 17th Floor |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | Plaintiffs, | |
| 10 | | |
| 11 | v. | |
| 12 | HARVEST REDWOOD RETIREMENT RESIDENCE, L.L.C., doing business as Redwood Retirement Residence; REDWOOD RETIREMENT RESIDENCE L.L.C.; and HOLIDAY RETIREMENT CORP., | |
| 13 | | |
| 14 | | |
| 15 | Defendants. | |

The parties submit the following Joint Case Management Conference Statement pursuant to Local Rule 16-9 and the Standing Order For All Judges Of The Northern District Of California, effective March 1, 2007:

**1.  Jurisdiction and Service:**

The parties agree that this Court has federal question jurisdiction over plaintiffs' claims under the federal Fair Housing Act, 42 U.S.C. section 3601 *et seq.*, and supplemental jurisdiction over plaintiffs' state law claims. There are no special issues with respect to venue or personal jurisdiction. All parties have been served and have appeared.

**2.  Facts:**

**Plaintiffs' Allegations:**

This is a fair housing case. Plaintiffs include current and former residents and family members of current and former residents of Redwood Retirement Residence ("Redwood"), a seniors-only apartment complex located in Napa, California. Plaintiffs also include Greater Fair Housing of Napa Valley, doing business as Fair Housing Napa Valley (hereafter "FHNV"), a non-profit fair housing organization incorporated under the laws of the State of California with its principal place of business in Napa, California. Plaintiffs allege that, commencing in October 2006, defendants, who own and manage Redwood, implemented and pursued a policy or practice of discriminating against persons with disabilities. Specifically, plaintiffs allege that defendants:

(a)   impose terms and conditions of tenancy requiring residents to be able to live independently, meet "independent living" eligibility requirements, and be capable of providing for their health care and personal needs;

(b)   issued eviction and move-out notices, or threatened to issue such notices, to residents with disabilities based on the residents' inability to meet independent living eligibility requirements or their perceived inability to provide for their own personal and health care needs;

(c)   maintain a "meal tray policy" charging extra fees for residents who use the services of caregivers to bring meal trays to their apartments because of a disability;[1]

---

[1] Defendants admit that they have enforced this policy in the past but deny that it is currently in effect. Neither plaintiffs nor the residents of Redwood have received anything in writing from defendants withdrawing the policy.

(d) examine or question residents about their disabilities or health conditions in order to determine whether they are able to live independently;

(e) make, print and publish statements that indicate a limitation on people with disabilities in housing, including making statements to the effect that residents must be able to live "independently;" and,

(f) fail to make reasonable accommodations when such accommodations are necessary to permit people with disabilities to use and enjoy a dwelling, including defendants' failure to accommodate residents with disabilities prior to issuing eviction or move-out notices. Plaintiffs also allege that defendants require residents of Redwood to pay a non-refundable security deposit, in violation of California Civil Code § 1950.5.

Individual plaintiffs include: (1) Plaintiff Eva Northern, an 86-year-old former resident of Redwood who was left with no other option but to move out after being subjected to defendants' discriminatory polices; (2) Nancy Northern, the daughter of Eva Northern and Ms. Northern's guardian ad litem, who assists her mother with her financial and other matters, including locating and securing housing; (3) Louise Whitaker, the daughter of former Redwood resident and former plaintiff Ruby Duncan (who passed away on the eve of the filing of the complaint), who had assisted her mother with financial and other matters, including locating and securing housing; and (5) FHNV, which has had its mission of eradicating housing discrimination and educating the public about housing discrimination frustrated by defendants' discriminatory policies and practices and has had to divert its resources to investigate and combat these discriminatory policies and practices.

Plaintiffs also are seeking to amend the complaint to add two new plaintiffs: Marie Broman and Al Fournier. Both are current Redwood residents who have been injured by defendants' discriminatory policies and the unlawful security deposit.

Plaintiffs seek to maintain this action as a class action. Class plaintiffs include: (1) a disability class, including: all tenants of Redwood who have resided there at any time since October 1, 2006, who have or may be subjected to defendants' challenged discriminatory housing practices, led by class representatives Marie Broman and Al Fournier; (2) a subclass (of the

disability class), led by class representative, Eva Northern, through her guardian ad litem, including all tenants of Redwood who have or may have been subjected to defendants challenged discriminatory housing practices and who vacated Redwood Retirement Residence under the threat of eviction at time since October 1, 2006; and (3) a security deposit class, led by Broman and Fournier, including all tenants of Redwood at any time commencing four years prior to the filing of this complaint who paid "non-refundable" security deposits in violation of California Code § 1950.5.

**Defendants' Statement of Facts and Factual Issues:**

This case essentially is a two-Plaintiff disability discrimination case pleaded under a variety of theories. Plaintiffs assert that during the period beginning in October 2006, certain Redwood residents were threatened, either directly or constructively, with eviction because they were unable to provide for their health care and personal needs and/or created a danger to themselves or others, even with the assistance of personal care givers. Plaintiffs assert this is discriminatory. Plaintiffs also assert that their disabilities were not reasonably accommodated by Defendants. They also assert they were unlawfully required to pay a non-refundable security deposit and meal tray fees, which allegedly constitute violations of state law.

Defendants deny all allegations. Defendants have asserted and will continue to assert both procedural and substantive defenses to all causes of action and do not believe they are liable for any damages or that any injunction is appropriate. They have legitimate business reasons for all actions taken, and there is no discriminatory animus or motive for any of the complained-of policies, conduct or actions.

Defendants do not believe this case is appropriately designated a class action. Defendants will object to any discovery that asserts such a presumption prior to class certification and will seek a deadline for further amendments to the Complaint that would add parties or substantively alter the bases for the discrimination claims.

The factual issues in dispute are:

(a) whether Eva Northern or Ruby Duncan were ever threatened, directly or indirectly, with eviction from Redwood;

(b) whether Eva Northern voluntarily chose to leave Redwood;

(c) whether Eva Northern or Ruby Duncan or their relatives were ever required to pay for meal trays;

(d) whether Eva Northern or Ruby Duncan or their relatives were required to pay a "non-refundable security deposit;"

(e) whether Defendants in good faith believed Plaintiff Eva Northern was a danger to herself at Redwood;

(f) whether the terms of the tenancy agreement, i.e., that residents must transfer if they are unable to provide for their health care and personal needs and/or create a danger to themselves or others, even with the assistance of personal care givers, is reasonable in light of Redwood's status as a residential living facility for seniors;

(g) whether the eligibility requirements for living at Redwood are reasonable in light of Redwood's status as a residential living facility for seniors;

(h) whether the meal tray policy in effect in late 2006 and early 2007 was reasonable in light of the circumstances;

(i) whether personal care givers hired by residents who were directly or constructively threatened with eviction were providing adequate care to those residents in 2006 and early 2007;

(j) whether Defendants engaged in an interactive process with residents they believed needed to transfer out of Redwood because they were unable to provide for their health care and personal needs and/or created a danger to themselves or others, even with the assistance of personal care givers;

(k) whether residents who were under threat of eviction requested accommodations that were reasonable;

(l) whether any residents were evicted despite requests for reasonable accommodation;

(m) whether it was reasonable for Defendants to inquire into the general health and mobility of Redwood residents in the fall of 2006 through interviews with the residents;

(n) whether Ruby Duncan or her daughter suffered any damages;

(o) whether Eva Northern or her daughter suffered any damages;

(p) whether Defendants' use of the term "independent living" is reasonable in light of Redwood's status as a residential living facility for seniors;

(q) whether Defendants' use of the term "independent living" is a subterfuge to discriminate against persons with disabilities.

(r) what specific mental or physical impairment does Ruby Duncan claim caused her to be treated differently and/or unlawfully by Defendants;

(s) what specific mental or physical impairment does Eva Northern claim caused her to be treated differently and/or unlawfully by Defendants;

(t) was Ruby Duncan treated differently than other similarly situated individuals;

(u) was Eva Northern treated differently than other similarly situated individuals;

(v) what disability is shared by members of the purported class;

(w) in what way have Defendants intimidated, harassed or interfered with Plaintiffs' enjoyment of the premises.

3. **Legal Issues:**

**Plaintiffs' Statement of Legal Issues**

Plaintiffs intend to show that defendants' policies, practices, and statements violated numerous sections of the Fair Housing Act and related laws. Different standards of proof apply to those sections.

**A.    Defendants' Policies and Practices Violate the Fair Housing Act, 42 U.S.C. §§ 3604(a) and (f).** Defendants' issuance of eviction and move-out notices to residents with disabilities, and promises or threats to issue such notices, based on the residents' perceived inability to meet independent living eligibility requirements or to provide for their own personal and health care needs, constitutes a refusal to rent, or otherwise make unavailable dwellings to people with disabilities at Redwood, in violation of 42 U.S.C. §§ 3604 (a),(f) and related state laws. Plaintiffs contend that defendants' discriminatory statements constitute direct evidence of discriminatory intent. See, *e.g., Gilligan v. Jamco Dev't Corp.*, 108 F.3d 246, 250 (9th Cir. 1997).

**B.    Defendants' Policies and Practices Violate the Fair Housing Act, 42 U.S.C. §**

3604(b). Plaintiffs contend that defendants' policies requiring tenants to be able to live independently, to meet "independent living" eligibility requirements, and be capable of providing for their health care and personal needs are unlawful terms and conditions of tenancy that, in purpose and effect, discriminate on the basis of disability in violation of 42 U.S.C. § 3604(b) and related state laws. See *Cason v. Rochester Housing Authority*, 748 F.Supp 1002, 1008-9 (W.D.N.Y 1990); *Niederhauser v. Independence Square Housing*, 4 Fair.-Fair Lending (Aspen Law & Bus). P 16, 305.2-6 (N.D. Cal. 1998); *U.S. v. Forest Dale, Inc.*, 818 F. Supp. 954 (N.D. Tex. 1993). In addition, defendants' meal tray policy is an unlawful condition of tenancy that, in purpose and effect, discriminates on the basis of disability in violation of 42 U.S.C. § 3604(b) and related state laws.

Plaintiffs contend that these terms and conditions violate the Act because the policies and practices were imposed "because of" disability. Because defendants' own statements provide direct evidence of intent to discriminate, plaintiffs need not rely on the prima facie case and burden-shifting concepts set forth in McDonnell Douglas and its progeny. *See Gilligan*, 108 F.3d at 250. [2]

Plaintiffs also allege that the terms and conditions have a disparate impact on people with disabilities, which does not require a showing of discriminatory intent. See *Gamble v. City of Escondido*, 104 F.3d 300, 306 (9th. Cir. 1997) (demonstration of discriminatory motive or intent is not required under a disparate impact theory).

C.   **Defendants' Policies and Practices Violate the Fair Housing Act, 42 U.S.C. § 3604(f).** Defendants' inquiries into and examinations of residents' health conditions and disabilities in order to determine whether they are able to live independently violate the Fair Housing Act. See 24 C.F.R. § 100.202(c) ("It shall be unlawful to make an inquiry to determine

---

[2] Defendants' assertion that they were motivated by benign concern for people with disabilities does not insulate them from liability under the Act. Housing practices employed "because of" disability constitute a violation, even if they were not motivated by animus or prejudice. See, e.g., *Williams v. Matthews Co.*, 499 F.2d 819, 827 (8th Cir.), *cert. denied*, 419 U.S. 1021 (1974); *Cato v. Jilek*, 799 F.Supp. 937, 942 n. 16 (N.D. Ill. 1992) (fear of neighbor's reaction does not justify exclusion based on race); *United States v. Reece*, 457 F.Supp. 43, 48 (D. Mont. 1973) (refusal to rent to women violates the FHA even if motivated by desire to protect them from risk of crime).

whether an applicant for a dwelling . . . has a handicap or to make an inquiry as to the nature or severity of a handicap of such person . . .") Defendants acknowledge that they are not licensed to provide any health care services and, therefore, have no non-discriminatory basis, as a housing provider, for using a corporate nurse to make inquiries into residents' disabilities.

**D.    Defendants' Statements Violate the Fair Housing Act, 42 U.S.C. §§ 3604(c), (f).** Defendants' statements in Redwood's rules, correspondence, advertising, eviction notices and elsewhere indicating a preference or limitation based on disability, including statements to the effect that residents must be able to live "independently," violate 42 U.S.C. §§ (c), (f) and related state laws. See *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898 (2nd Cir. 1993)(statements that, on their face, reflect discriminatory preferences or limitations, are unlawful regardless of the intent of the housing provider); see also *Blomgren v. Ogle*, 850 F.Supp 1427, 1437-40 (E.D. Wash 1993) (discriminatory rules violate §3604(c) even if they were not enforced).

**E.    Defendants Have Failed to Grant Reasonable Accommodations in Violation of 42 U.S.C. 3604(f)(3)(b).** Defendants' failure to make reasonable accommodations for residents with disabilities, including defendants' failure to accommodate residents prior to issuing move-out and eviction notices, violated 42 U.S.C. §3604(f)(3)(b) and related state laws. Violation of this provision does not require a showing of intent to discriminate.

**F.**    Defendants intimidated, coerced, threatened, and interfered with the use or enjoyment of dwellings on the basis of disability and have created a hostile living environment in violation of 42 U.S.C. §3617 and related state laws;

**G.**    Defendants have violated the substantially equivalent provisions of the California Fair Employment and Housing Act, Government Code § 12955 et seq.;

**H.**    Defendants' have unlawfully charged Redwood residents a non-refundable security deposit in violation of California Civil Code § 1950.5;

**I.**    Defendants have violated the Unruh Act, Civil Code § 51 et seq., by committing discriminatory housing practices at Redwood Retirement Residence, a business establishment.

**J.**    Defendants have violated the Unfair Competition Law, Business & Professions

Code section 17200 et seq. See *People v. McKale*, 25 Cal.3d 626, 637 (1979) ("[d]iscrimination in housing and business establishments . . . is clearly unlawful . . . Such unlawful business practices constitute unfair competition pursuant to Business and Professions Code section 17200.")

**Defendants' Statement of Legal Issues**

The legal issues presented are as follows:

(a) whether Plaintiff GNFHC has standing to sue for damages;

(b) whether Plaintiffs Duncan or Northern can act as class representatives;

(c) whether Plaintiff GNFCH can act as class representative;

(d) whether Plaintiffs have provided any direct evidence of Defendants' intent to discriminate against persons with disabilities in violation of the Federal Housing Act ("FHA");

(e) whether Plaintiffs can show that Defendants' articulated business reasons for directly or constructively evicting certain residents in 2006 and 2007 were pretextual;

(f) whether the tenancy agreement, which requires residents to agree to transfer if they cannot provide for their health care or personal care needs or have a physical or mental condition that creates a danger to themselves or others, violates the FHA;

(g) whether Plaintiffs can show that Defendants' articulated business reasons for initiating a meal tray policy in 2006 and 2007 were pretextual;

(h) whether the FHA or California's Fair Employment and Housing Act ("FEHA") govern senior community dining facilities or any related meal policies;

(i) whether the meal tray policy, as written or implemented, discriminates against persons with disabilities in violation of the FHA, FEHA or California's Disabled Persons Act ("DPA");

(j) whether Defendants have reasonably accommodated Plaintiffs as required under the FHA and FEHA;

(k) whether Plaintiffs have identified policies or written materials disseminated by Defendants that violate provisions of the FHA or FEHA;

(l) whether Plaintiffs were denied access to Redwood facilities in violation of the DPA or California's Unruh Act;

(m) whether the accommodations or modifications sought by Plaintiffs were reasonable;

(n) whether the accommodations or modifications sought by Plaintiffs created an undue hardship;

(o) whether Defendants' practices relating to Plaintiffs constitutes an unlawful business practice as set forth in Business & Professions Code section 17200 *et seq.*;

(p) whether Defendants have violated Civil Code section 1950.5;

(q) whether Plaintiffs Northern or Duncan have standing to seek equitable relief;

(r) whether any or all of the FHA, FEHA or DPA claims are moot.

### 4. Motions:

Plaintiffs' motion for a preliminary injunction was denied by this Court on September 26, 2007. There are no pending motions. Plaintiffs anticipate filing a motion for summary judgment regarding Defendants' policies, statements, and practices. Defendants also anticipate filing a motion for summary judgment.

As discussed in further detail below, Plaintiffs anticipate filing a motion for class certification after discovery is completed. Defendants object to delaying a class motion until after discovery and will consider moving for early certification.

### 5. Amendment of Pleadings:

The parties agreed to substitute Mae Louise Whitaker for Ruby Duncan as plaintiff because of Ms. Duncan's death. The court signed an order permitting the substitution on October 9, 2007.

**Plaintiffs:** Plaintiffs also anticipate filing a first amended complaint to add Marie Broman and Al Fournier as plaintiffs and class representatives. Plaintiffs will provide a copy of the proposed first amended complaint to defendants as soon as possible with a request that defendants stipulate to issuance of an order permitting plaintiffs to file it. If defendants do not so stipulate, plaintiffs will file a motion to amend as soon as possible.

**Defendants:** Defendants seek a date certain upon which additional Plaintiffs must be added. Defendants have indicated a willingness to consider stipulation to this particular amendment.

6. **Evidence Preservation:**

Plaintiffs and Defendants are aware of the duty to preserve all documents and things relevant to the facts alleged in this case.

7. **Disclosures:**

The parties have agreed to serve their initial disclosures on October 19, 2007.

8. **Discovery:**

The parties do not propose any modifications to the rules governing the maximum number of discovery requests and depositions at this time. The parties reserve their rights to enter into stipulations to exceed those limits or request such relief from the Court, as the case develops.

**Plaintiffs:** Plaintiffs noticed the deposition of Tom Ahrens, an employee of defendants, for November 1, 2007. Within the coming weeks, plaintiffs anticipate serving a Rule 30(b)(6) deposition notice seeking to depose defendant Harvest Redwood Retirement LLC as well as one set of interrogatories and one set of requests for production of documents to each defendant.

If the case does not reach an early resolution, plaintiffs plan to take depositions of former Redwood managers, David and Denise Hall and at least one of Redwood's current resident managers. Plaintiffs will also serve a request for admissions in an effort to narrow the disputed issues and reach an agreement on a joint statement of facts for the parties' cross motions for summary judgment. Plaintiffs will serve additional written discovery if necessary based on depositions and defendants' responses in the first round of written discovery.

**Defendants:** Defendants propose that discovery be conducted in two phases: (1) pre-certification and (2) post-certification. Plaintiffs have canvassed Redwood Residence on multiple occasions by telephone and in writing both before and during their attempt to obtain an injunction, and are aware of the identities of the potential class members. Defendants do not wish to burden residents if it is not necessary and believe early resolution of the class issue will assist the parties in that effort and will not cause prejudice to Plaintiffs.

Before certification, Defendants anticipate taking the deposition of (1) the named Plaintiffs, (2) principals and caregivers from the Velez care company, (3) some of the persons who provided declarations in support of the injunction and (4) any disclosed experts. Defendants

intend to serve at least one set of document requests, interrogatories and admissions to the parties and to send out third party discovery. They will seek relevant information from Plaintiffs and purported class members' medical files and personal caregiver files. Defendants may seek independent medical examinations of Plaintiff Eva Northern and other identified purported class members, i.e., those who were served with eviction notices during the relevant period.

If Plaintiffs prevail on their class certification motion, Defendants anticipate at least one other round of discovery, including medical files, personal care giver files and independent medical examinations of class members. Defendants also will request an additional case management conference so as to streamline discovery and request a new trial date.

## 9. Class Actions:

Plaintiffs plan to file a motion to certify the class after discovery has been completed. Plaintiffs propose September 3, 2008 as the date for the hearing on class certification.

Defendants believe a motion to certify should be heard after a first phase of discovery. Defendants propose a briefing schedule with a hearing date on or about May 28, 2008.

## 10. Related Cases:

The parties are not aware of any related cases pending.

## 11. Relief:

Plaintiffs seek compensatory damages, statutory damages, punitive damages, declaratory relief, and injunctive relief designed to ensure that defendants treat people with disabilities in accordance with the Fair Housing Act and take affirmative steps to prevent future discrimination. Plaintiff FHNV's compensatory damages are based on its diversion of resources and frustration of mission, attributable to the discriminatory housing practices at Redwood. The remaining plaintiffs' compensatory damages are based on their out of pocket costs (for Marie Broman, Eva Northern, Nancy Northern, and Lou Whitaker), loss of housing (in the case of Eva Northern), and emotional distress and attendant bodily injuries (for all individual plaintiffs). Plaintiffs also seek reimbursement for their attorneys' fees and costs pursuant to the Fair Housing Act, 42 U.S.C. § 3613, and related state laws.

Defendants do not believe they are liable for any damages. They will seek bifurcation of

any punitive damages phase of the trial, if punitive damages are determined to be at issue.

**12.    Settlement and ADR:**

Both sides have expressed an interest in conducting early settlement negotiations. Both parties are willing to participate in mediation or an early settlement conference with a magistrate judge. The parties have filed a notice of need for ADR phone conference, which has been set for October 23, 2007. Plaintiffs anticipate sending an initial settlement demand after the first round of discovery has been completed.

**13.    Consent to Magistrate Judge For All Purposes:**

Defendants have declined to proceed before a magistrate.

**14.    Other References:**

This case is not suitable for binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.    Narrowing of Issues:**

The issues in this case may be narrowed through requests for admissions, the motion for class certification and the cross motions for summary judgment.

**16.    Expedited Schedule:**

This is not the type of case that can be handled on an expedited basis with streamlined procedures.

**17.    Scheduling:**

**Plaintiffs:**    Plaintiffs request that the Court issue a scheduling order with all litigation dates and a trial date, as proposed below.

| Event | Date |
|---|---|
| Expert Designation | July 25, 2008 |
| Rebuttal Expert Designation | August 25, 2008 |
| Non-Expert Discovery Cut Off | September 1, 2008 |
| Expert Discovery Cut Off | September 18, 2008 |
| Hearing on Class Certification | Wed., December 3, 2008, 9:00 a.m. |

| Hearing on Dispositive Motions | Wed., February 4, 2009, 9:00 a.m. |
|---|---|
| Pretrial Conference | March 2009 |
| Trial | April 2009 |
| | |

**Defendants:** Defendants propose the following Scheduling Order:

| Event | Date |
|---|---|
| Cutoff For Amending Complaint to Add Plaintiffs or Class Allegations | December 1, 2007 |
| Pre-Certification Discovery Cut Off | April 1, 2008 |
| Motion for Class Certification Filed | April 7, 2008 |
| Opposition to Class Cert Motion Filed | May 1, 2008 |
| Reply to Opposition Filed | May 14, 2008 |
| Hearing on Class Certification | May 28, 2008 |
| Expert Designation | June 30, 2008 |
| Rebuttal Expert Designation | July 15, 2008 |
| Non-Expert Discovery Cut Off (Class) | July 31, 2008 |
| Expert Discovery Cut Off | August 31, 2008 |
| Hearing on Dispositive Motions | September 17, 2008 |
| Trial (Non-Class Action) | November 2008 |

18. **Trial:**

Both sides have requested a jury trial. The parties anticipate that a class action trial will last approximately ten days. Defendants estimate that a non-class action trial will last between four and seven days.

19. **Disclosure of Non-Party Interested Entities or Persons:**

All parties have filed the certification of interested entities. The following disclosures were made in plaintiffs' certification: "Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report."

- 15 -

Defendants made the following disclosures: "Defendant Redwood Retirement Residence, L.L.C. does not have a parent corporation. Holiday Acquisition Corp., a privately held Delaware corporation, is the parent company of Defendant Harvest Redwood Retirement Residence, L.L.C. As of March 2007, Defendant Holiday Retirement Corp. changed its name to HRC Investors Corp. HRC Investors Corp. does not have a parent corporation."

**20.   Defendants' Proposal To Facilitate The Litigation**

Because multiple aspects of this case, particularly those related to meals, are similar if not identical to disability access lawsuits brought in this court under the Americans with Disabilities Act, Defendants believe the litigation may be served by implementing the procedures set forth in General Order No. 56, adopted June 21, 2005. The parties' counsel have discussed and tentatively agreed to utilize Magistrate Elizabeth Laporte and also agreed in principle to attempt to engage in alternative dispute resolution before the end of the calendar year. Defendants believe General Order No. 56 could facilitate that process.

Plaintiffs oppose implementing the procedures set forth in General Order 56, because this is not an ADA case and Plaintiffs' claims are unrelated to issues of physical access to the subject premises. Furthermore, applying General Order 56 is unnecessary because the parties have agreed to engage in settlement negotiations at an early stage in the litigation.

**21.   Plaintiffs' Statement Pursuant to Local Rule 16-9(b):**

1. For the disability class, the subclass of the disability class, and the security deposit class, respectively, plaintiffs contend that the action is maintainable as a class action under FRCP 23, paragraphs (a),(b)(1)(A),(b)(1)(B), (b)(2), and (b)(3).

2. Class plaintiffs include: (1) a disability class, including: all tenants of Redwood who have resided there at any time since October 1, 2006, who have or may be injured by defendants' challenged discriminatory housing practices, led by class representatives Marie Broman and Al Fournier; (2) a subclass (of the disability class), led by class representative, Eva Northern, through her guardian ad litem, including all tenants of Redwood who have or may have been subjected to defendants challenged discriminatory housing practices and who vacated Redwood Retirement Residence under the threat of eviction at time since October 1, 2006; and

- 16 -

1  (3) a security deposit class, led by Broman and Fournier, including all tenants of Redwood at any
2  time commencing four years prior to the filing of this complaint who paid "non-refundable"
3  security deposits in violation of California Code § 1950.5.
4      3. The proposed disability class is sufficiently numerous as it includes potentially
5  hundreds of Redwood tenants with disabilities or perceived disabilities, or those who may
6  develop disabilities. The disability class members are typical and share common interests as all
7  of them were subjected to defendants' challenged discriminatory housing practices. The
8  proposed security deposit class is sufficiently numerous and it includes potentially hundreds of
9  tenants. The security deposit class members are typical and share common interests as they have
10 all paid non-refundable security deposits.
11     4. Plaintiffs anticipate filing a motion for class certification after completion of discovery
12 and propose September 3, 2008 as the date for the hearing on class certification.
13 ///
14 ///
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**Defendants' Response:** Plaintiffs' purported classes do not meet the standards required under federal law. *See Mantolete v. Bolger,* 767 F.2d 1416, 1425 (9th Cir. 1985); *Sokol v. New United Motor Mfg., Inc.,* 1999 U.S. Dist. LEXIS 20215 (N.D. Cal. 1999).

DATED: October 18, 2007                BRANCART & BRANCART
                                       PROTECTION & ADVOCACY, INC.


                                       By:/s/ Liza Cristol-Deman
                                       LIZA CRISTOL-DEMAN
                                       BRANCART & BRANCART
                                       Attorneys for Plaintiffs


DATED: October 18, 2007                PROTECTION & ADVOCACY, INC.


                                       By:/s/ Stuart Seaborn
                                       STUART SEABORN
                                       Attorneys for Plaintiffs
                                       NORTHERN, MARIE BROMAN, AL
                                       FOURNIER, AND DISABILITY CLASS
                                       PLAINTIFFS ONLY


DATED: October 18, 2007                HANSON BRIDGETT MARCUS
                                       VLAHOS & RUDY, LLP


                                       By:/s/ Kurt A. Franklin
                                       KURT A. FRANKLIN
                                       SARAH D. MOTT
                                       Attorneys for Defendants
                                       HARVEST REDWOOD RETIREMENT
                                       RESIDENCE, L.L.C., doing business as
                                       Redwood Retirement Residence,
                                       RETIREMENT RESIDENCE, L.L.C.;
                                       and HOLIDAY RETIREMENT CORP.