BRANCART & BRANCART
  Christopher Brancart (SBN 128475)
  Liza Cristol-Deman (SBN 190516)
Post Office Box 686
Pescadero, CA 94060
Tel:    (650) 879-0141
Fax:    (650) 879-1103
cbrancart@brancart.com
lcristoldeman@brancart.com

Attorneys for All Plaintiffs

PROTECTION & ADVOCACY, INC.
  Stuart Seaborn (SBN 198590)
  Dara Schur (SBN 98638)
  Eric Gelber (SBN 95256)
100 Howe Ave.  Suite 235N
Sacramento, CA 95825
Tel:    (916) 488-9950
Fax:    (916) 488-9960
stuart.seaborn@pai-ca.org

Attorneys for Eva Northern, Marie Broman,
  Al Fournier, and Class Plaintiffs Only

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **GREATER NAPA FAIR HOUSING CENTER, a California Not for Profit Corporation, doing business as FAIR HOUSING NAPA VALLEY, as an individual entity only; EVA NORTHERN, an incompetent adult, by and through her Guardian ad Litem, NANCY NORTHERN; MARIE BROMAN; and AL FOURNIER each individually and on behalf of individuals similarly situated; NANCY NORTHERN, in her individual capacity only; and LOUISE WHITAKER, in individual capacity and as Successor in Interest to Ruby Duncan,** )<br><br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.  C-07-3652 PJH<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF**<br><br>**CLASS ACTION** |
| **Plaintiffs,** )<br><br>      vs. )<br><br>**HARVEST REDWOOD RETIREMENT RESIDENCE, L.L.C., doing business as Redwood** )<br>)<br>)<br>)<br>)<br>) | |

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF**

Retirement Residence; REDWOOD
RETIREMENT RESIDENCE L.L.C.;
and HOLIDAY RETIREMENT CORP.,

Defendants.

## I. INTRODUCTION

1.    In this action, plaintiffs seek monetary, declaratory and injunctive relief against the owners, former owners, and management company of the Redwood Retirement Residence, a retirement community located at 2350 Redwood Road in Napa, California, for discriminating on the basis of disability or handicap in violation of the federal Fair Housing Act and related state laws.  Plaintiffs Marie Broman, Al Fournier, and Eva Northern seek to represent a class and subclass of former, current and future tenants of the Redwood Retirement Residence, who have lived or will live there at any time since October 1, 2006.  Plaintiff Nancy Northern brings this action as the guardian ad litem for her mother, Eva Northern, and on her own behalf.  She does not seek to represent a class or be a class representative.  Mae Louise Whitaker brings this action on her own behalf and as the successor in interest to her mother, Ruby Duncan.  Ms. Whitaker does not seek to represent a class or be a class representative. Greater Napa Fair Housing Center brings this action on its own behalf and does not seek to represent a class or be a class representative.

## II. JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

2.    Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. section 1331 in that the claims alleged herein arise under the laws of the United States.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. section 1367 to hear and determine plaintiffs' state law claims because those claims are related to plaintiffs' federal law claims and arise out of a common nucleus of related facts.  Plaintiffs' state law claims are related to plaintiffs' federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

3.    Pursuant to Local Rule 3-2, venue is proper in the San Francisco Division

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF**

1  because the claims alleged herein arose within Napa County, California.

## III. PARTIES

3  4.    Plaintiff Greater Napa Valley Fair Housing Center, doing business as Fair

4  Housing Napa Valley (hereafter "FHNV"), is a not for profit fair housing organization

5  incorporated under the laws of the State of California with its principal place of business

6  in Napa, California.  FHNV is the fair housing organization serving Napa County.

7  FHNV's primary objectives are to promote equal opportunity in the renting, purchasing,

8  financing and advertising of housing; to educate people regarding federal and state fair

9  housing laws; to promote integrated communities and neighborhood diversity; and, to

10  eliminate discriminatory housing practices.  It is engaged in several different activities to

11  further its mission of promoting equal housing opportunities, including:  education

12  programs in the community regarding fair housing, training programs for real estate

13  professionals, research regarding housing discrimination in the community, advocacy

14  for housing-related issues, and fair housing counseling and investigations.

15  5.    Plaintiff Mae Louise Whitaker, the daughter of deceased plaintiff Ruby

16  Duncan, is a resident of Napa County, California.  She brings this action on her own

17  behalf and as the successor in interest to Ms. Duncan.  During the time that Ms.

18  Duncan was a resident of the Redwood Retirement Residence, Ms. Whitaker assisted

19  her mother with her financial affairs, medical issues, housing, and a wide variety of

20  other matters.  Mae Louise Whitaker and Ruby Duncan entered into a springing durable

21  general power of attorney dated December 27, 1999, designating Ms. Whitaker as the

22  attorney in fact for her mother, Ms. Duncan.  The durable power of attorney was not

23  revoked or cancelled before Ms. Duncan's death, and Ms. Duncan's will and last

24  testament named Ms. Whitaker as the executrix of her estate.

25  6.    Plaintiff Mae Louise Whitaker also brings this action as the successor in

26  interest of her mother, Ruby Duncan.  The Court issued an order dated October 10,

27  2007, permitting Ms. Whitaker to be substituted as a plaintiff in this action in place of

28  Ms. Duncan.  Ms. Duncan was 100 years old and residing at Redwood Retirement

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND
INJUNCTIVE RELIEF**

3

1  Residence when she passed away on July 11, 2007.  She had been a resident of

2  apartment 209 at the Redwood Retirement Residence since approximately June 5,

3  2003.  Previously, she was a resident of apartment 110 at the Redwood Retirement

4  Residence between approximately May 1991 and May 2002.  Mrs. Duncan had arthritis

5  and used a walker or electric cart to move around.  At all times relevant to this

6  complaint, she was substantially impaired in her ability to walk and engage in other

7  major life activities.  At all times relevant to this complaint, she qualified as a person

8  with a disability or handicap within the meaning of the federal Fair Housing Act,

9  Disabled Persons Act, and the California Fair Employment and Housing Act.

10      7.    Plaintiff Eva Northern is 86 years old.  She was a resident of apartment

11  112 at the Redwood Retirement Residence from approximately March 1, 2001 until

12  March 15, 2007.  At the time that Eva Northern moved into the Redwood Retirement

13  Residence, she had several disabilities, including diabetes.  She also had complications

14  from a previous stroke, including communication and perception impairments.  She

15  qualifies as a person with a disability or handicap within the meaning of the federal Fair

16  Housing Act, Disabled Persons Act, and the California Fair Employment and Housing

17  Act.  She is represented herein by her daughter and guardian ad litem, Nancy Northern.

18      8.    Plaintiff Nancy Northern, the daughter of Eva Northern, is a resident of

19  Contra Costa County, California.  During the time that Eva Northern was a resident of

20  the Redwood Retirement Residence and continuing through the present, Nancy

21  Northern has assisted her mother with her financial affairs, medical issues, housing,

22  and a wide variety of other matters.  Eva Northern and Nancy Northern entered into a

23  durable power of attorney dated March 4, 1996, designating Nancy Northern as the

24  attorney in fact for her mother, Eva Northern.  The durable power of attorney has not

25  been revoked or cancelled.  Ms. Northern brings this action in her individual capacity

26  and as guardian ad litem for her mother Eva Northern.

27      9.    Plaintiff Marie Broman is 93 years old.  Ms. Broman is a resident of

28  Redwood Retirement Residence.  She has resided in apartment 212 at Redwood

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF**

4

1  Retirement Residence since approximately September 20, 2001.  She uses a

2  wheelchair or electric cart to move around.  She is substantially impaired in her ability to

3  walk and engage in other major life activities.  She qualifies as a person with a disability

4  or handicap within the meaning of the federal Fair Housing Act, Disabled Persons Act,

5  and the California Fair Employment and Housing Act.

6      10.    Plaintiff Al Fournier is 86 years old.  Mr. Fournier is a resident of Redwood

7  Retirement Residence.  He has resided in apartment 127 at the Redwood Retirement

8  Residence since approximately July 2003.  Mr. Fournier has a heart condition and a

9  pacemaker with an internal defibrillator.  His heart condition makes it difficult to walk

10  short distances.  He is substantially impaired in his ability to walk and engage in any

11  form of physical activity.  He qualifies as a person with a disability or handicap within

12  the meaning of the federal Fair Housing Act, Disabled Persons Act, and the California

13  Fair Employment and Housing Act.

14      11.    The Redwood Retirement Residence, the subject premises in this action,

15  has approximately 100 apartment units that are marketed and offered for rental to

16  members of the general public.  It is located at located at 2350 Redwood Road in Napa,

17  California. Plaintiffs allege based on information and belief that the Redwood

18  Retirement Residence is offered as housing for older persons as defined in 42 U.S.C.

19  section 3607(b)(1).  The Redwood Retirement Residence qualifies as a dwelling within

20  the meaning of 42 U.S.C section 3602(b) and a housing accommodation within the

21  meaning of Government Code section 12927(d).

22      12.    Defendant Harvest Redwood Retirement Residence, LLC is a Delaware

23  Limited Liability Company licensed in California with a primary business address in

24  Salem, Oregon.  A grant deed recorded with the Napa County Recorder on March 15,

25  2007 indicates that defendant Harvest Redwood Retirement Residence, LLC is the

26  current owner of the Redwood Retirement Residence

27      13.    Defendant Redwood Retirement Residence LLC is an Oregon Limited

28  Liability Company with a primary address in Salem, Oregon.  According to public

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF**

1  documents recorded with the Napa County Recorder, defendant Redwood Retirement

2  Residence LLC was the owner of the Redwood Retirement Residence from

3  approximately April 5, 1999 until approximately February 28, 2007, when the manager

4  of the LLC signed a grant deed transferring ownership of the property to defendant

5  Harvest Redwood Retirement Residence LLC.

6      14.   Defendant Holiday Retirement Corporation (hereafter, "Holiday"), also

7  known as HRC Investors Corporation,  is a corporation registered to do business in

8  California with a primary business address in Salem, Oregon.  Holiday has been the

9  management company responsible for the day-to-day management and operation of

10  the Redwood Retirement Residence at all times relevant herein.

11      15.   Each defendant is, and at all times relevant was, the agent, employee or

12  representative of each other defendant; each defendant, in doing the acts or in omitting

13  to act as alleged in this complaint, was acting within the course and scope of his or her

14  actual or apparent authority pursuant to such agency; or the alleged acts or omissions

15  of each defendant as agent were subsequently ratified and adopted by each defendant

16  as principal.

17      16.   Defendants Harvest Redwood Retirement Residence, LLC, Redwood

18  Retirement Residence LLC, and Holiday Retirement Corporation retained the authority

19  to control and direct the agents who committed the unlawful practices alleged in this

20  complaint.

21      17.   Defendants and their agents have conspired to violate federal and state

22  laws.  In committing each of the unlawful practices alleged in this complaint, each

23  defendant and their agents was acting during the course and in furtherance of that

24  conspiracy.

## IV. CLASS ACTION ALLEGATIONS

### A.    DISABILITY CLASS

27      18.   <u>Class Definition</u>.  Class representatives Eva Northern, Marie Broman, and

28  Al Fournier bring this action on behalf of themselves and members of a class of

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND
INJUNCTIVE RELIEF**

1   similarly situated individuals.  The class that plaintiffs seek to represent is defined as

2           All tenants of the Redwood Retirement Residence who have resided there

3           at any time since October 1, 2006, who have been or may be injured by

4           defendants' challenged discriminatory housing practices.

5   In addition, class representative Eva Northern, through her guardian ad litem, seeks to

6   represent the subclass of former residents defined as

7           All tenants of the Redwood Retirement Residence, who have been or may be

8           subjected to defendants' challenged discriminatory housing practices and who

9           vacated the Redwood Retirement Residence under threat of eviction at any time

10          since October 1, 2006.

11  The class and subclass do not include home health care aides or attendants who may

12  have resided at the Redwood Retirement Residence while in the employ of the

13  Redwood residents or their families.  The term "disability class plaintiffs" as used herein

14  refers to Marie Broman, Al Fournier, and Eva Northern and the class and subclass of

15  former, current and future residents whom they seek to represent.  This action is

16  maintainable as a class action under Rule 23(a), Rule 23(b)(2) and Rule 23(b)(3) of the

17  Federal Rules of Civil Procedure.

18        19.   <u>Numerosity</u>.  The number of members of the class on whose behalf

19  plaintiffs sue is unknown, but it is estimated to be so numerous that joinder of all such

20  members is impracticable.  The number of persons possibly affected by defendants'

21  illegal policies and practices is indeterminate, but it is larger than can be addressed by

22  joinder.

23        20.   <u>Adequacy of Representation</u>.  Class plaintiffs will fairly and adequately

24  protect the interests of the class because plaintiffs' counsel possesses the requisite

25  resources and ability to prosecute this action and because the class representatives'

26  interests are consistent with the interests of the class.

27        21.   <u>Commonality and Typicality</u>.  This suit poses questions of law and fact

28  that are common to and affect the rights of all members of the class.  The claims of the

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF**

1    class representatives are typical of the claims of class members as a whole, because

2    defendants have implemented and pursued a policy or practice of discriminating

3    against persons with disabilities or handicaps by promulgating and enforcing

4    discriminatory policies, by subjecting persons with disabilities or handicaps to different

5    terms and condition of rental, by serving eviction notices on people with disabilities or

6    handicaps, and publishing statements indicating limitations on people with disabilities or

7    handicaps.  Specifically, defendants:

8        a.      apply different terms and conditions of tenancy to disabled or

9            handicapped residents because of disability or handicap, including but not

10           limited to charging extra fees for residents who receive their meals in their

11           apartments because of a disability or handicap;

12       b.      evict residents with disabilities or handicaps because of disability or

13           handicap;

14       c.      subject residents to examinations or questions to determine

15           whether they are able to live independently;

16       e.      make, print or publish statements that indicated a limitation upon

17           people with disabilities or handicaps in the rental of housing, including but

18           not limited to making oral or written statements to the effect that all

19           residents must be able to live "independently;" and,

20       f.      fail to make reasonable accommodations when such

21           accommodations are necessary to permit people with disabilities or

22           handicaps to use and enjoy a dwelling.

23   Defendants' policies, practices and statements constitute discriminatory housing

24   practices within the meaning and in violation of the federal Fair Housing Act, the

25   California Fair Employment and Housing Act, the Disabled Persons Act, and the Unruh

26   Civil Rights Act.  These policies, practices and statements affect class members

27   comprised of all persons who have resided at the Redwood at any time from October 1,

28   2006, to the present, and will continue to affect future residents of the Redwood until

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF**

1    they are stopped.

2        22.    Superiority.  A class action is superior to other available methods for the

3    fair and efficient adjudication of the controversy of the claims of the class plaintiffs.

4    Common factual and legal questions so clearly predominate that class treatment is

5    appropriate.  The class as a whole is entitled to declaratory relief and to injunctive relief

6    to enjoin the unlawful policies and practices herein alleged.  Defendants applied their

7    discriminatory policies, practices and statements throughout the entire operation of the

8    Redwood.

9        23.    General Applicability.  Defendants have acted or refused to act on

10    grounds generally applicable to each class member by promulgating and enforcing

11    rules, regulations and policies that discriminate against persons with disabilities or

12    handicaps, thereby making appropriate final injunctive and declaratory relief with

13    respect to the class as a whole.

14        24.    Risk of Inconsistent Adjudication.  The class and subclass are readily

15    definable and prosecution of this action as a class action will eliminate the possibility of

16    repetitious litigation, and will eliminate the risk of inconsistent or varying adjudications

17    with respect to individual members of the class that would establish incompatible

18    standards of conduct for defendants.

19        **B.    SECURITY DEPOSIT CLASS**

20        25.    Class Definition.  In addition to the discriminatory housing practices

21    challenged herein, defendants have charged unlawful, non-refundable security deposits

22    in violation of California law.  Class representatives Marie Broman and Al Fournier bring

23    this action on behalf of themselves and members of a class of similarly situated

24    individuals.  The class that plaintiff seeks to represent is defined as

25        All tenants of the Redwood Retirement Residence at any time

26        commencing four years prior to the filing of this complaint who paid "non-

27        refundable" security deposits to defendants in violation of California Civil

28        Code § 1950.5.

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF**

1    The term "security deposit class plaintiffs" as used herein refers to Marie Broman, Al

2    Founrier, and the class of persons whom they seek to represent.  This action is

3    maintainable as a class action under Rule 23(a), Rule 23(b)(2) and Rule 23(b)(3) of the

4    Federal Rules of Civil Procedure.

5         26.    Numerosity.  The number of members of the class on whose behalf

6    plaintiffs sue is unknown, but it is estimated to be so numerous that joinder of all such

7    members is impracticable.  The number of persons possibly affected by defendants'

8    illegal policies and practices is indeterminate, but it is larger than can be addressed by

9    joinder.

10        27.    Adequacy of Representation.  Class plaintiffs will fairly and adequately

11    protect the interests of the class because plaintiffs' counsel possesses the requisite

12    resources and ability to prosecute this action and because the class representative's

13    interests are consistent with the interests of the class.

14        28.    Commonality and Typicality.  This suit poses questions of law and fact

15    that are common to and affect the rights of all members of the class.  The claims of the

16    class representatives are typical of the claims of class members as a whole, because

17    defendants have implemented and a practice of charging tenants as "non-refundable"

18    signing charge at the commencement of tenancy and refusing to refund that charge at

19    the conclusion of tenancy.  That unlawful practice affected former tenants and affects

20    current tenants, and will continue to affect future residents of the Redwood until it is

21    stopped.

22        29.    Superiority.  A class action is superior to other available methods for the

23    fair and efficient adjudication of the controversy of the claims of the class plaintiffs.

24    Common factual and legal questions so clearly predominate that class treatment is

25    appropriate.  The class as a whole is entitled to declaratory relief and to injunctive relief

26    to enjoin the unlawful policies and practices herein alleged.  Defendants collected their

27    "non-refundable" security deposit upon the commencement of new tenancies at

28    Redwood and refused to refund that security deposit during the class period.

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND
INJUNCTIVE RELIEF**

1    30.    <u>General Applicability</u>.  Defendants have acted or refused to act on

2  grounds generally applicable to each class member by collecting a "non-refundable"

3  security deposit upon the commencement of new tenancies at Redwood during the

4  class period and refusing to refund that security deposit at the conclusion of tenancies,

5  thereby making appropriate final injunctive and declaratory relief with respect to the

6  class as a whole.

7    31.    <u>Risk of Inconsistent Adjudication</u>.  The class and subclass are readily

8  definable and prosecution of this action as a class action will eliminate the possibility of

9  repetitious litigation, and will eliminate the risk of inconsistent or varying adjudications

10  with respect to individual members of the class that would establish incompatible

11  standards of conduct for defendants.

12  **V.  <u>FACTS UNDERLYING THE CLAIMS OF THE CLASSES AND SUBCLASS</u>.**

13  **A.    INTRODUCTION**

14    32.    Defendants, acting individually and in concert, directly and through their

15  agents, implemented a series of policies and practices with the purpose or effect of

16  discriminating against residents with disabilities or handicaps at the Redwood

17  Retirement Residence.

18    33.    Defendants have unlawfully discriminated against the disability class

19  plaintiffs by refusing to rent, evicting, or otherwise making unavailable dwellings to

20  people with disabilities or handicaps at the Redwood Retirement Residence, in violation

21  of 42 U.S.C. section 3604(a), (f), and related state laws.

22    34.    Defendants have unlawfully discriminated against the disability class

23  plaintiffs in the terms, conditions or privileges of the rental of apartment units at the

24  Redwood Retirement Residence by promulgating and enforcing rules with the purpose

25  and effect of discriminating against people with disabilities or handicaps, in violation of

26  42 U.S.C. section 3604(b), (f), and related state laws.

27    35.    Defendants have unlawfully discriminated against the disability class

28  plaintiffs by making and causing to be made, printing and publishing discriminatory

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF**

1  rules, regulations and statements indicating preferences, limitations and discrimination

2  based on handicap or disability at the Redwood Retirement Residence, in violation of

3  42 U.S.C. section 3604(c), (f), and related state laws.

4      36.    Defendants have unlawfully discriminated against the disability class

5  plaintiffs by refusing to make reasonable accommodations to rules, policies, practices

6  or services when such accommodations are necessary to afford people with disabilities

7  or handicaps an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C.

8  section 3604(f)(3)(B), and related state laws.

9      37.    Defendants have unlawfully discriminated against the disability class

10 plaintiffs by coercion, intimidation, threats and interference with the use and enjoyment

11 of dwellings because of handicap or disability, and by creating a hostile living

12 environment in violation of 42 U.S.C. section 3617 and related state laws.

13     38.    Defendants have unlawfully charged the security deposit class plaintiffs

14 non-refundable security deposits in connection with the rental of apartments at the

15 Redwood Retirement Residence in violation of California Civil Code section 1950.5.

16 **B.    FACTS UNDERLYING THE CLAIMS OF MAE LOUISE WHITAKER,**

17 **INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO DECEASED**

18 **PLAINTIFF RUBY DUNCAN**

19     39.    In 1991, Ruby Duncan moved from a retirement residence in Riverside,

20 California to the Redwood Retirement Residence in order to live closer to her daughter,

21 Mae Louise Whitaker.  Between May 1991 and May 2002, Mrs. Duncan lived in

22 apartment 110 at the Redwood Retirement Residence.

23     40.    In June 2002, Mrs. Duncan moved to an assisted living facility in Napa,

24 California, where she lived for approximately one year.  At the end of that year, she

25 decided to return to the Redwood Retirement Residence.  On or about June 5, 2003,

26 she signed a new rental agreement for apartment 209 at the Redwood Retirement

27 Residence.  Apartment 209 is a studio apartment with one bathroom and a small

28 kitchenette.  The initial rent for apartment 209 was $1,695 but it was increased to

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND
INJUNCTIVE RELIEF**

1    $1,955 in or about June 2007.  The rent included three meals a day, light

2    housekeeping, social programs for the residents, and a variety of other amenities.  Mrs.

3    Duncan passed away on July 11, 2007.

4        41.    The rental agreement signed by Mrs. Duncan required payment of a

5    "signing fee" in the amount of $847.50, and a security deposit in the amount of $847.50.

6    The "signing fee" is described in an addendum to the rental agreement as a "one-time

7    fee [that] is non-refundable" unless the tenant moves out in 90 days or less.  If the

8    tenant stays at the Redwood Retirement Residence 91 days or longer, the "signing fee"

9    is non-refundable.  Mrs. Duncan paid both the security deposit and non-refundable

10    "signing fee" to the Redwood Retirement Residence on or about June 5, 2003.

11        42.    Mrs. Duncan had the assistance of a home health care aide from

12    approximately June 2003 until she passed away.  Mrs. Duncan and Mrs. Whitaker paid

13    the home health care aide directly for her services.  The home health care aide assisted

14    Mrs. Duncan with daily activities such as taking medications and ambulating.

15    Frequently, Mrs. Duncan did not feel well enough to dress and leave her apartment

16    because of her health.  The home health care aide went to the kitchen at meal times to

17    pick up meal trays for Mrs. Duncan so that she could stay in her apartment instead of

18    going to the communal dining room.

19        43.    In late 2006, during a visit to the Redwood Retirement Residence, Mrs.

20    Whitaker found a document in her mother's apartment entitled "the Redwood Meal Tray

21    Policy."  She read the document and became concerned because the new meal tray

22    policy indicated that the management would assess extra charges for in-home meal

23    service with very limited exceptions.  The limited exceptions – short term illness such as

24    the flu, or short term recuperation from injury or illness with full recovery expected – did

25    not cover Mrs. Duncan's situation.

26        44.    At around the same time that she became aware of the new meal tray

27    policy, Mrs. Whitaker learned that the managers of the Redwood Retirement Residence

28    were asking residents to move out if they could no longer use the communal dining

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND
INJUNCTIVE RELIEF**

1 room or did not otherwise fit within the managers' definition of an "active, independent"

2 senior.

3     45.    In December 2006, Mrs. Whitaker contacted the managers of the

4 Redwood Retirement Residence and asked about the meal trays. Mrs. Whitaker

5 pointed out that in-home meal trays did not pose any extra burden or expense for the

6 Redwood Retirement Residence since Mrs. Duncan's home health care aide picked up

7 and returned the trays and dishes to the kitchen. She also asked for a reduction in rent

8 as reimbursement for the meals Ruby Duncan did not take from the kitchen. In

9 response to these inquiries, one of the resident managers of Redwood Retirement

10 Residence, Denise Hall, informed Ms. Whitaker that her mother would have to move

11 out if she could not eat her meals in the dining room.

12     46.    Shortly thereafter, Mrs. Whitaker provided a letter to the Redwood

13 Retirement Residence from Mrs. Duncan's physician verifying that Mrs. Duncan should

14 be permitted to take her meals in her apartment due to her physical condition. Neither

15 Mrs. Duncan nor Mrs. Whitaker received any response to the physician's letter.

16     47.    In December 2006, Mrs. Whitaker contacted the managers of the

17 Redwood Retirement Residence to inquire about the move-out notices that had been

18 served on some disabled residents. Denise Hall stated that Mrs. Duncan was not on

19 "the list" of residents who were being asked to move out, but that she would be asked to

20 move out "soon," or words to that effect. Mrs. Whitaker asked why the managers were

21 evicting these people. Mr. Hall and Mrs. Hall stated that they wanted the Redwood

22 Retirement Residence to be a retirement home, like it used to be, rather than an "old

23 folks' home," or words to that effect. They stated that they were "weeding out" the

24 wheelchairs and walkers because they gave Redwood Retirement Residence "a bad

25 image," or words to that effect. They added that Mrs. Whitaker should start looking for

26 another home for her mother, Ruby Duncan.

27     48.    Before Mrs. Duncan's death, Mrs. Whitaker and Mrs. Duncan continued to

28 fear that the managers would serve Mrs. Duncan with a move out notice or take other

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF**

1  action to evict Mrs. Duncan from the Redwood Retirement Residence.  Mrs. Duncan did

2  not want to move out of the Redwood Retirement Residence.

3        **C.**      **FACTS UNDERLYING THE CLAIMS OF EVA NORTHERN AND NANCY**

4                 **NORTHERN.**

5        49.    In December 2000, Eva Northern and Nancy Northern visited the

6  Redwood Retirement Residence to look into renting an apartment for Eva Northern.

7  Eva Northern and Nancy Northern decided to rent an apartment at the Redwood

8  Retirement Residence with two bedrooms and one bathroom.  Nancy Northern

9  informed the resident managers that they liked the two-bedroom apartment because

10 her mother might need extra room for a live-in care giver as she aged.  Eva Northern

11 and Nancy Northern expected that Eva Northern would live at the Redwood Retirement

12 Residence for the rest of her life.

13       50.    In January 2001, Eva Northern signed a rental agreement for apartment

14 112 at the Redwood Retirement Residence, and moved in on or about March 1, 2001.

15 The apartment had a small kitchenette with a mini refrigerator and sink.  The monthly

16 rent  included three meals a day, light housekeeping, social programs for the residents,

17 and a variety of other amenities.  When she moved out in March 2007, the monthly rent

18 for apartment 112 was $2,735.

19       51.    At the time that Eva Northern moved into the Redwood Retirement

20 Residence, she had several disabilities, including diabetes.  She also had complications

21 from a previous stroke, including communication and perception impairments.  Soon

22 after Eva Northern moved in to the Redwood Retirement Residence, Nancy Northern

23 hired home health care aides to assist Eva Northern with daily activities such as taking

24 medications and getting dressed.  The home health care aides also went to the

25 Redwood Retirement Residence kitchen at meal times to pick up meal trays for Eva

26 Northern to eat in her apartment.  The home health care aides assisted Eva Northern

27 for several hours each day throughout her tenancy at the Redwood Retirement

28 Residence.  Nancy Northern and Eva Northern paid the home health care aides directly

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND
INJUNCTIVE RELIEF**

1  for their services.

2      52.    In September 2006, Nancy Northern received a phone call from one of

3  Eva Northern's home health care aides, informing her that the Redwood Retirement

4  Residence had a new policy prohibiting her from bringing Eva Northern's meals to her

5  apartment every day.  Shortly thereafter, Eva Northern received a notice from the

6  Redwood Retirement Residence entitled "The Redwood Meal Tray Policy."  That notice

7  reads, in pertinent part,

8          With few exceptions, meal trays will be permitted only for residents who

9          are temporarily ill or who are rehabilitating and cannot come to the dining

10         room due to their short-term condition where full or near full recovery is

11         expected.

12         ...

13         If the temporary illness or rehabilitation lasts longer than 3 days, the

14         Redwood will charge the resident a $10.00 per day meal tray preparation

15         fee commencing on the 4th day trays are being delivered to the resident.

16     53.    The same notice also stated, "please keep in mind that the Redwood is a

17  retirement community designed for active and independent seniors."

18     54.    Nancy Northern called the resident managers of the Redwood Retirement

19  Residence to discuss the new meal tray policies.  She informed them that her mother,

20  Eva Northern, wanted to continue to have her home health care aide pick up meal trays

21  from the kitchen and bring them to her room.  The managers agreed that this

22  arrangement could continue for some unspecified period of time.

23     55.    On or about December 31, 2006, a home health care aide contacted

24  Nancy Northern by phone and stated the Redwood Retirement Residence had

25  prohibited her from picking up any additional meals for Eva Northern.  She stated that

26  Eva Northern had not been given any breakfast by the Redwood Retirement

27  Residence, and that she had taken some fruit from a holiday gift basket so that Eva

28  Northern could eat and her blood sugar would not become dangerously low.

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF**

56.    On the same day that she received the call from the home health care aide, Nancy Northern drove to the Redwood Retirement Residence and met with the managers. She explained to them that Eva Northern did not eat her meals in the dining room because of her communication impairments. The managers agreed to permit the home health care aides to pick up additional food trays if Nancy Northern would agree to pay $5.00 per tray. Nancy Northern agreed to pay the charges because she was told her mother's meal trays would be discontinued if she did not agree to pay. Nancy Northern reiterated to the resident managers that she disagreed with the meal tray policy.

57.    On or about January 3, 2007, Nancy Northern received a phone call from Tom Ahrens, who identified himself as a regional manager for Holiday. Mr. Ahrens stated that the Redwood Retirement Residence is an "independent living facility," and that people who cannot eat their meals in the dining room "do not belong at the Redwood," or words to that effect. Mr. Ahrens stated that the Redwood Retirement Residence was "not intended" for people who could not make it to the dining room. Nancy Northern told Mr. Ahrens that she had never before been told that the Redwood Retirement Residence was limited to people who could use the dining room, and that she had helped her mother move into the Redwood Retirement Residence with the expectation that she could live there until she died even if she had disabilities that prevented her from going to the dining room.

58.    Nancy Northern advised Mr. Ahrens that the meal trays imposed no additional burden or cost on the Redwood Retirement Residence, since the privately-paid, home health care aide picked up the meal trays, brought them to Eva Northern, and returned them to the kitchen after she was finished. Nancy Northern also pointed out that her mother was diabetic, and that it was inhumane to deny her food. Mr. Ahrens stated that he would permit her to continue to receive meal trays in her room free of extra charges until January 8, 2007, but no longer. Nancy Northern also stated that since meals were included in the monthly rental, her mother should be reimbursed

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF**

1  if the Redwood Retirement Residence refused to provide those meals.  Mr. Ahrens

2  stated that he would look into her request for reimbursement and call her back.  Mr.

3  Ahrens never called her back.  Nancy Northern then made the same request to the

4  managers at Redwood Retirement Residence.  Eventually, she received a small rent

5  reduction for the meals Eva Northern did not eat from the Redwood dining room.

6      59.    Nancy Northern was shocked and upset by this phone call with Mr.

7  Ahrens.  She acted quickly to ensure that her mother would be able to eat despite the

8  Redwood Retirement Residence's policy.  She purchased a small freezer and placed it

9  in Eva Northern's apartment.  She purchased and cooked meals to be frozen or

10 refrigerated in her mother's apartment to be served by the home health care aides.  For

11 two and one-half months, Nancy Northern made several trips per week to the Redwood

12 Retirement Residence to purchase and deliver meals for her mother.

13     60.    During this same period of time, Nancy Northern learned that some of the

14 residents at the Redwood Retirement Residence had been asked to move out because

15 they required assistance and could not live independently.  She feared that her mother

16 would receive an eviction notice.  As a result of this fear, the new meal tray policy, and

17 Mr. Ahrens' comments indicating that people with disabilities were not welcome at the

18 Redwood Retirement Residence, Nancy Northern began to look for another residence

19 for her mother.

20     61.    In early March 2007, Nancy Northern made arrangements to move Eva

21 Northern to Aegis, an assisted living facility in Napa, California.  Eva Northern

22 vehemently opposed moving out of the Redwood Retirement Residence.  Nevertheless,

23 she moved out of the Redwood Retirement Residence to Aegis, a facility that provides

24 housing for older persons, on or about March 15, 2007.  The monthly cost of Aegis far

25 exceeded the cost of the Redwood Retirement Residence, even when the cost of the

26 private, in-home health care aide at the Redwood Retirement Residence is included.

27     62.    After moving out of the Redwood Retirement Residence, Eva Northern's

28 physical and mental condition declined significantly.  Eva Northern was hospitalized

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF**

1   with an infection on or about June 1, 2007.  Following her release from the hospital,

2   Eva Northern moved out of Aegis and into a board and care home.  The cost of the

3   board and care home exceed the cost of Redwood Retirement Residence.

**D.     THE FACTS UNDERLYING THE CLAIM OF MARIE BROMAN.**

5       63.     On or about September 20, 2001, Marie Broman signed a rental

6   agreement for apartment 212 at the Redwood Retirement Residence.  Apartment 212 is

7   a one-bedroom apartment with one bathroom and a small kitchenette.  The initial rent

8   for apartment 212 was $1,950 but it has been increased annually and now is $2,290.

9   The rent includes three meals a day, light housekeeping, social programs for the

10  residents, and a variety of other amenities.  Ms. Broman continues to live in apartment

11  212 at the Redwood Retirement Residence.  Ms. Broman moved into Redwood with the

12  expectation that she could live there for the rest of her life.

13      64.     The addendum to the rental agreement signed by Ms. Broman requires

14  payment of a "signing fee" in the amount of $975, and the rental agreement requires a

15  security deposit in the amount of $975.  The "signing fee" is described in the addendum

16  to the rental agreement as a "one-time fee [that] is non-refundable" unless the tenant

17  moves out in 90 days or less.  If the tenant stays at the Redwood Retirement

18  Residence 91 days or longer, the "signing fee" is non-refundable.  Ms. Broman paid

19  both the security deposit and non-refundable "signing fee" to the Redwood Retirement

20  Residence on or about September 20, 2001.

21      65.     Ms. Broman uses a wheelchair or electric cart to ambulate.  She employs

22  private home health care aides to assist her with daily activities such as bathing and

23  getting dressed.  Before the meal tray policy was instituted, Ms. Broman also requested

24  that her private home health care aide obtain a dinner tray for her every evening from

25  the kitchen so she could eat dinner in her room.  She pays the home health care aides

26  directly for their services.

27      66.     In late 2006, Ms. Broman received a copy of a document entitled

28  "Redwood Meal Tray Policy."  She read the document and believed that she would

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND
INJUNCTIVE RELIEF**

1  have to pay the extra charges if she continued to have her home health care aide

2  obtain nightly dinner trays.  Rather than pay those extra charges, Ms. Broman decided

3  to purchase her own food to prepare in her apartment.  From late 2006 until the

4  present, Ms. Broman has purchased, and her health care aide has prepared, her own

5  dinners in her apartment.

6      67.    At around the same time that she became aware of the new meal tray

7  policy, Ms. Broman learned from other residents and caregivers that the managers of

8  the Redwood Retirement Residence were asking residents to move out if they could no

9  longer use the communal dining room or did not otherwise fit within the managers'

10  definition of an "active, independent" senior.  Ms. Broman became concerned that she

11  might be asked to move out.  Ms. Broman did not want to move out of Redwood.

12  Because she feared she would receive a 30-day notice, Ms. Broman began searching

13  for another residence.

14      **E.    THE FACTS UNDERLYING THE CLAIM OF AL FOURNIER**

15      68.    On or about May 8, 2003, Al Fournier entered into a rental agreement for

16  apartment 127 at the Redwood Retirement Residence.  Apartment 127 is a two-

17  bedroom apartment with one bathroom and a small kitchenette.  The initial rent for

18  apartment 127 was $2,495 but it has been increased annually and now is $2,870.  The

19  rent includes three meals a day, light housekeeping, social programs for the residents,

20  and a variety of other amenities.  Al Fournier lived with his wife, Mavis Fournier, in

21  apartment 127 until November 16, 2004, when Mavis Fournier passed away.  Mr.

22  Fournier continues to live alone in apartment 127.  Mr. Fournier moved into Redwood

23  with the expectation that he could live there for the rest of his life.

24      69.    The rental agreement signed by Mr. Fournier requires payment of a

25  "signing fee" in the amount of $1,247.50, and a security deposit in the amount of

26  $1,247.50.  The "signing fee" is described in an addendum to the rental agreement as a

27  "one-time fee [that] is non-refundable" unless the tenant moves out in 90 days or less.

28  If the tenant stays at the Redwood Retirement Residence 91 days or longer, the

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF**

1  "signing fee" is non-refundable.  Mr. Fournier paid both the security deposit and non-

2  refundable "signing fee" to the Redwood Retirement Residence on or about May 8,

3  2003.

4       70.    Mr. Fournier is 86 years old.  He has a heart condition which required

5  implanting a pacemaker and internal defibrillator.  His heart condition makes it difficult

6  for him to walk even short distances.

7       71.    In late 2006, Mr. Fournier received a copy of the Redwood Meal Tray

8  Policy, described above.  Mr. Fournier was concerned about the new meal tray charges

9  outlined in the policy.  Although he eats most of his meals in the Redwood dining room

10  and does not regularly request meal trays, he became concerned about other residents

11  who would be required to pay fo meal trays due to their disabilities.  He recalled that his

12  wife had meal trays delivered for approximately two weeks immediately before her

13  death, without any extra charges.  He would have had to pay extra for those meal trays

14  if the new meal tray policy had been in effect at that time.  He became concerned about

15  having to pay the meal tray charges himself in the future, should he become disabled

16  and unable to eat in the Redwood dining room.

17       72.    At around the same time that he became aware of the new meal tray

18  policy, Mr. Fournier learned from other residents that the managers of Redwood

19  Retirement Residence were asking residents to move out if they could no longer use

20  the communal dining room or did not otherwise fit within the managers' definition of an

21  "active, independent" senior.  Mr. Fournier was outraged about the move out notices.

22  and that some of his fellow Redwood residents were being asked to move out.  Mr.

23  Fournier was also concerned that other Redwood residents who were not "active" and

24  "independent" would be asked to move out in the future.  In addition, in light of his age

25  and medical condition, Mr. Fournier worried that he, too, might be asked to move out

26  and might not be able to stay at Redwood for the rest of his life.

27      **F.**    **THE INVOLVEMENT OF FAIR HOUSING NAPA VALLEY**

28      73.    Between November 2, 2006 and the present, FHNV received complaints

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF**

from at least eight individuals about discrimination based on handicap or disability at the Redwood Retirement Residence.  The first complainant advised FHNV that the Redwood Retirement Residence management had given a family member a 30-day notice to vacate because of her health, advising that "the Redwood is an independent living community for seniors able to maintain an active lifestyle."  In response to that complaint and those that followed, FHNV conducted an investigation into defendants' rental practices.

74.    During that investigation, plaintiff FHNV learned that numerous residents had received oral or written 30-day eviction notices starting in the fall of 2006 because of their handicaps or disabilities.  Plaintiffs further allege based on information and belief that many of the residents who received move out notices have since moved out of the Redwood Retirement Residence.  Other residents have moved out because of the threat of receiving such notices and the fear of having to relocate on short notice.

75.    During their investigation, plaintiff FHNV also learned that some or all residents at the Redwood Retirement Residence had been subjected to an examination, or questioning, or both, about their physical and mental condition in the fall of 2006.  Plaintiffs allege based on information and belief that the examination and questioning were designed to determine which residents should be asked to move out because they were "too disabled" to reside at the Redwood Retirement Residence.

76.    During their investigation, plaintiff FHNV also learned that defendants had placed restrictions on the activities of home health care aides hired by the Redwood Retirement Residence residents, including prohibiting the aides from sitting in the dining room to assist residents during meals.

77.    On or about June 18, 2007, plaintiff FHNV distributed letters and brochures to residents of the Redwood Retirement Residence as part of an educational campaign about fair housing rights.

**E.    INJURIES**

78.    Defendants have made statements, promulgated and enforced rules,

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF**

1  regulations, and policies, evicted tenants, and created or maintained a hostile

2  environment with the purpose or effect of discriminating against people with handicaps

3  and disabilities at the Redwood Retirement Residence.  Defendants continue to engage

4  in such a pattern or practice of discrimination so as to constitute a continuing violation.

5      79.    By reason of defendants' unlawful acts and practices, the disability class

6  plaintiffs have suffered economic damages, violation of their civil rights, emotional and

7  physical distress, humiliation and mental anguish, including bodily injury such as

8  headaches, stomach aches and loss of sleep, breach of the covenant of quiet

9  enjoyment of their dwellings and invasion of the private right of occupancy.  The

10  members of the disability plaintiff sub-class have also suffered loss of an important

11  housing opportunity, constructive and wrongful eviction, including breach of the

12  covenant of quiet enjoyment of their dwellings and invasion of the private right of

13  occupancy, and economic damages and emotional distress in connection with their

14  move out of the Redwood Retirement Residence.  The disability class plaintiffs and

15  plaintiff sub-class are, therefore, entitled to compensatory damages.

16      80.    By reason of defendants' unlawful acts and practices, the security deposit

17  class plaintiffs have suffered actual damages and entitled to refund of the unlawfully

18  collected security deposit and statutory damages.

19      81.    By reason of defendants' unlawful acts and practices, individual plaintiffs

20  Mae Louise Whitaker and Nancy Northern have suffered economic damages,

21  emotional and physical distress, humiliation and mental anguish, including bodily injury

22  such as headaches, stomachaches and loss of sleep.  These individual plaintiffs,

23  therefore, are entitled to compensatory damages.

24      82.    Defendants' discriminatory actions have caused and are continuing to

25  cause harm to Fair Housing Napa Valley by frustrating its mission of eliminating

26  discriminatory housing practices throughout its service area.  Defendants' actions have

27  interfered with all of the efforts and programs of FHNV by (1) forcing FHNV to direct

28  their scarce resources to identifying and counteracting the defendants' unlawful

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND
INJUNCTIVE RELIEF**

1   practices, and (2) frustrating its mission of eliminating discriminatory housing practices

2   in their service area.  Defendants' unlawful acts and practices have caused FHNV to

3   suffer economic losses in staff pay, in funds expended in support of its investigation,

4   and in the inability to prevent other unlawful housing practices and undertake other

5   activities in support of its mission.  Defendants' actions have set back FHNV's goal of

6   achieving fair housing for prospective tenants regardless of disability by impeding its

7   effort to educate the public about the fair housing laws.  FHNV is, therefore, entitled to

8   compensatory damages.

9       83.    In doing the acts of which the disability class plaintiffs, FHNV and the

10  individual plaintiffs complain, defendants and their agents and employees acted with

11  reckless disregard for plaintiffs' civil rights.  Accordingly, the disability class plaintiffs,

12  FHNV and the individual plaintiffs are entitled to punitive damages.

13      84.    There now exists an actual controversy between the parties regarding

14  defendants' duties under the federal and state fair housing laws.  Accordingly, the

15  disability class plaintiffs, FHNV and the individual plaintiffs are entitled to declaratory

16  relief.

17      85.    Unless enjoined, defendants will continue to engage in the unlawful acts

18  and the pattern or practice of discrimination described above.   The disability class

19  plaintiffs, FHNV and the individual plaintiffs have no adequate remedy at law.  They are

20  now suffering, and will continue to suffer, irreparable injury from defendants' acts and

21  their pattern or practice of discrimination based on disability or handicap unless relief is

22  provided by this Court.  Accordingly, the disability class plaintiffs, FHNV and the

23  individual plaintiffs are entitled to injunctive relief.

## VI.  CLAIMS

### A.  FIRST CLAIM

### [Fair Housing Act]

### *Disability Class Plaintiffs, FHNV and Individual Plaintiffs v. Defendants*

86.    Plaintiffs reallege and incorporate by reference each paragraph previously

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF**

1    alleged in this complaint.

2        87.    Defendants have injured the disability class plaintiffs, FHNV and the

3    individual plaintiffs by committing discriminatory housing practices in violation of the

4    federal Fair Housing Act, 42 U.S.C. section 3601 et seq.

5                            **B.  SECOND CLAIM**

6                    **[California Fair Employment and Housing Act]**

7        ***Disability Class Plaintiffs, FHNV and Individual Plaintiffs v. Defendants***

8        88.    Plaintiffs reallege and incorporate by reference each paragraph previously

9    alleged in this complaint.

10       89.    Defendants have injured the disability class plaintiffs, FHNV and the

11   individual plaintiffs by committing discriminatory housing practices in violation of the

12   California Fair Employment and Housing Act, California Government Code section

13   12955, et seq.

14                           **C.  THIRD CLAIM**

15                    **[California Unruh Civil Rights Act]**

16       ***Disability Class Plaintiffs and Individual Plaintiffs v. Defendants***

17       90.    Plaintiffs reallege and incorporate by reference each paragraph previously

18   alleged in this complaint.

19       91.    Defendants have injured the disability class plaintiffs and individual

20   plaintiffs by committing unlawful practices in violation of the Unruh Civil Rights Act,

21   California Civil Code section 51, et seq.

22       92.    Pursuant to the Unruh Civil Rights Act the disability class plaintiffs and

23   individual class plaintiffs are entitled to statutory damages, among other remedies, of

24   up to three times actual damages as determined by a trier of fact.

25                           **D.  FOURTH CLAIM**

26                           **[Disabled Persons Act]**

27           ***Disability Class Plaintiffs only v. Defendants***

28       93.    Plaintiffs reallege and incorporate by reference each paragraph previously

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND
INJUNCTIVE RELIEF**

1    alleged in this complaint.

2        94.    Defendants injured the disability class plaintiffs in violation of the Disabled

3    Persons Act by committing the following unlawful housing practices:

4            a.    Denying full and equal access to housing accommodations, in

5                violation of Civil Code § 54.1(b)(1); and,

6            b.    Refusing to make reasonable accommodations in rules, policies,

7                practices, or services when those accommodations may be necessary to

8                afford individuals with disabilities the equal opportunity to use and enjoy

9                housing accommodations, in violation of Civil Code 54.1(b)(3)(B).

10        83.    Pursuant to Civil Code 54.1, the disability class plaintiffs are entitled to

11    statutory damages, among other remedies, of up to three times actual damages as

12    determined by a trier of fact.

13                    **E.  FIFTH CLAIM**

14            **[Unfair Business Practices re Discrimination]**

15        *Disability Class Plaintiffs, FHNV and Individual Plaintiffs v. Defendants*

16        95.    Plaintiffs reallege and incorporate by reference each paragraph previously

17    alleged in this complaint.

18        96.    In acting as herein alleged, defendants have engaged in a pattern or

19    practice of unlawful discrimination in the operation of the Redwood Retirement

20    Residence, a business establishment, and therefore have engaged in acts of unfair

21    competition as the same is defined in section 17200 of the Business & Professions

22    Code.

23        97.    In bringing this action, plaintiffs and the plaintiff class are acting in the

24    interest of themselves and the general public pursuant to the California Business and

25    Professions Code § 17204.

26        98.    Plaintiffs and the plaintiff class seek injunctive relief ordering defendants

27    to stop their unlawful practices.

28    ///

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND
INJUNCTIVE RELIEF**

## F.  SIXTH CLAIM

### [Unfair Business Practices]

### *Security Deposit Class Plaintiffs only v. Defendants*

99.    Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

100.    In acting as herein alleged, defendants have engaged in acts of unfair competition as the same is defined in section 17200 of the Business & Professions Code. by violating Civil Code § 1950.5 governing the security deposits.

101.    In bringing this action, plaintiffs and the plaintiff class are acting in the interest of themselves and the general public pursuant to the California Business and Professions Code § 17204.

102.    Plaintiffs and the plaintiff class seek injunctive relief ordering defendants to stop their unlawful practices and restitution of the security deposits wrongfully collected and/or withheld.

## G.  SEVENTH CLAIM

### [Unlawful Security Deposit]

### *Security Deposit Class Plaintiffs only vs. Defendants*

103.    Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

104.    Defendants injured the security deposit class plaintiffs by demanding and collecting a non-refundable security deposit in violation of Civil Code § 1950.5(m).

105.    Pursuant to Civil Code § 1950.5(l), the security deposit class plaintiffs are entitled to statutory damages of up to twice the amount of the non-refundable security deposit, plus actual damages according to proof.

## VII.  RELIEF

WHEREFORE, plaintiffs and all class members pray for the following relief against defendants:

1.    That the classes and sub-class described above be certified in this action

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF**

1   pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2       2.    That the plaintiffs and all class members be awarded statutory,

3   compensatory, and punitive damages according to proof;

4       3.    That the Court enter a declaratory judgment that defendants have violated

5   the applicable provisions of the federal Fair Housing Act and California Fair

6   Employment and Housing Act;

7       4.    That the Court grant temporary, preliminary and permanent injunctive

8   relief against all practices complained about herein and affirmative injunctive relief

9   requiring defendants, their partners, agents, employees, assignees and all persons

10  acting in concert with or participating with them, to take affirmative action to provide

11  equal housing opportunities to all persons without regard to disability or handicap;

12      5.    That the Court order defendants to make restitution to plaintiffs and the

13  security deposit plaintiff class;

14      6.    For costs of suit, including reasonable attorneys' fees; and,

15      7.    All such other relief as the Court deems just.

16  Dated: October 22, 2007.

17                              Respectfully submitted,

18                              BRANCART & BRANCART
                                PROTECTION & ADVOCACY, INC.
19

20                              _____
                                Liza Cristol-Deman
21                              BRANCART & BRANCART
                                Attorneys for All Plaintiffs
22

23

24

25

26

27

28

**FIRST AMENDED CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY, AND
INJUNCTIVE RELIEF**